## STATE, RESPONDENT, v. JACKSON, APPELLANT.

CRIMINAL LAW— *Evidence— Portion of writing given in evidence the whole may be given.* —It is not error to allow the State to read in evidence to the jury the whole of the testimony of the prosecuting witness, given at the preliminary examination, where a portion of such testimony has been so read by the defense.

COUNTY ATTORNEY— *Notary public— Affidavit on motion for new trial.* —A county attorney may hold the office of notary public, and it is no objection to an affidavit used by the State, on a motion for a new trial, that the notary before whom it was taken was the county attorney.

MOTION— *Notice of motion.* —The denial of a motion of the defendant to strike out an affidavit, proposed to be used by the State on the motion for a new trial, is not error, where no notice of such motion had been given, and the defendant refused to give any, and insisted that the hearing of the motion for a new trial should proceed forthwith. (Case of *Murray* v. *Larabie,* 8 Mont. 213, affirmed.)

CRIMINAL EVIDENCE— *Proof of prejudice against accused.* —There is no error in the refusal of the court to allow the defense to ask the prosecuting witness "whether she said that she would suicide if Jackson were not convicted," for the purpose of showing prejudice against the defendant, as such matter is wholly immaterial and its exclusion no injury to the defendant.

CRIMINAL TRIAL— *Newspapers— Statutory construction.* —The word "papers" in section 354, third division of the Compiled Statutes, providing that "a new trial shall be granted when the jury has received any evidence, papers, or documents not authorized by the court," refers to such written instruments as might be competent testimony when inspected by the court, and found to be competent under the rules of evidence, and does not include newspapers; and the reception by the jury of newspapers containing comments on the case does not, in itself, vitiate the verdict.

SAME— *Misconduct of jury— Reading of newspapers— Presumption of prejudice not absolute.* —Under subdivision 2 of section 354, third division, Compiled Statutes, providing that "a new trial shall be granted when the jury has been separated without leave of the court, or have been guilty of any misconduct tending to prevent a fair and due consideration of the case," the reception by the jury of newspapers, containing comments on the trial adverse to the defendant, is misconduct tending to show injury to the defendant; but while prejudice is presumed, the presumption is not absolute and may be removed by the State, and

for this purpose the testimony of the jurors, as to facts but not as to impressions, may be used. (Cases of *Territory* v. *Hart,* 7 Mont. 489; *Territory* v. *Clayton,* 8 Mont. 1.)

SAME — *Reading of newspapers by the jury.* — The presumption of injury to the defendant by the reading of a newspaper, containing comments adverse to the defendant, by one of the jury on the second and third days of a six days' trial, is sufficiently removed by the fact that the act was severely criticised by the judge in the presence of the jury, and the bailiff ordered to cut from newspapers thereafter coming into the possession of the jury all references to the trial; and it is no ground for a new trial that three days after the discharge of the jury a newspaper, of a date subsequent to the order of the court, containing comments on the trial, was found in the jury-room, where there is absolutely no proof that a juryman ever read it.

*Evidence reviewed* and held sufficient to support a conviction of murder in the first degree.

*Appeal from First Judicial District, Lewis and Clarke County.*

The defendant was tried before HUNT, J.

Statement of the case, prepared by the judge who delivered the opinion.

The defendant was indicted, tried, convicted, and sentenced for the crime of murder in the first degree. He appeals from the judgment and from the order of the court denying the motion for a new trial. The grounds relied upon in his argument in this court are as follows: —

1. The verdict is not sustained by the evidence. The principal witness for the State, and the witness without whose testimony the case must utterly fail, was Mathilde Laveille, widow of the deceased. In an exhaustive examination and cross-examination of many hours, she testified minutely as to the facts of the homicide. She gave her evidence through the medium of an interpreter, she not speaking the English language well. The defense sought to impeach her and break down her evidence by endeavoring to prove contradictory statements and intrinsic inconsistencies. A portion of this effort was the introduction of her testimony given before the magistrate on the preliminary examination.

2. Defendant offered in evidence on the trial a portion of the record of the testimony of the witness, Mathilde Laveille, given before the magistrate; this for the purpose of contradicting her statements made on the trial in the District Court. This the court admitted, but with the ruling, made at the request of the

State, that the State might read the whole of her evidence given on the examination. This was done. This admission of the whole record, which was a written one, after admitting the portion which the defense chose to produce, is assigned as error.

3. Certain affidavits were used by the State on the motion for a new trial. They were taken before C. B. Nolan, a notary public of Lewis and Clarke County. Said Nolan was also county attorney for that county. The defendant objected to the use of these affidavits, on the ground that Nolan, being county attorney, could not also hold the office of notary public, and that his acts as notary public were void, and the papers were therefore not affidavits. The objection was overruled, and the defendant assigns error.

4. Upon the hearing of the motion for new trial, defendant moved to strike out one of the affidavits being used by the State, on the ground that it had been taken in Cascade County by a notary of the county of Lewis and Clarke, and offered to prove the fact, asserting that an affidavit taken out of the county for which the notary was appointed was void. No notice of such motion was given, and defendant declined to give any, and insisted that the hearing should proceed forthwith on the motion for new trial, and the court should exclude the affidavit alleged to be irregularly taken. The objection was overruled, and error is assigned.

5. Upon the trial the defendant's counsel asked the witness, Mathilde Laveille, whether she had not (giving time and place) said that she would commit suicide if Jackson were not convicted in this case. Counsel stated that he asked the question for the purpose of knowing whether the witness made such a statement, and was prepared to prove it if she denied it. This question was asked in connection and immediate context with other examination, by which counsel were endeavoring to show that the witness had a prejudice against the defendant. The question had just previously been put, " Is it not a fact that you are violently prejudiced against Jackson at the present time?" to which she had answered, "I do not like him now, because he put me in misery, but before that I had no ill-feeling against him whatever." The court excluded the question as to suicide. This is another error assigned.

6. The case was on trial ten days. The jury was impaneled March 12th. They retired for deliberation March 18th. The verdict was returned March 21st. It appears by the affidavit of Isaac Holbrook, bailiff of the jury, and by the affidavit of a newsboy, that on March 13th and 14th some of the jury obtained copies of daily newspapers, the Journal and the Independent. These papers contained accounts of the trial of the case, as it had proceeded, and also comments. The comments were interspersed in the account in the news columns. It is not necessary to recite these comments, but it is sufficient to say that they were adverse to the defendant as to the offense for which he was being tried. Holbrook further states that he knows that some of the jurymen read these accounts and comments. These objectionable newspapers got to the jurymen, in their editions of the 13th and 14th. The attention of the jury and the bailiff was then called to the matter in open court, and thereupon the bailiffs in charge of the jury were ordered by the court that all newspapers thereafter coming into the possession of the jurymen should have cut from them all references to the trial. This order was carried out. (An alleged infraction of this order is noticed, paragraph 7, *infra.*) Ten of the jury make affidavit that they have no recollection of ever, at any stage of the trial, having read any newspaper accounts or comments upon the trial, and that their verdict rendered was upon the evidence introduced on the trial, and was not affected in any manner whatsoever by outside influences of any character, because no such influences had any existence in fact. One other juror swears that he did read the accounts and comments; and the twelfth says that he may have glanced cursorily at them, but is not positive even of this. The last two also swear very positively that what they read, or may have read, made no impression upon them, and had no influence upon their verdict.

Counsel for appellant relies upon section 354, Criminal Practice Act: "A new trial shall be granted . . . . when the jury has received any evidence, papers, or documents not authorized by the court." He contends: *First.* That, as it appears that the jury received these papers, it must be presumed that they read them; that they were influenced thereby, and injury to the defendant resulted; and that the jurymen cannot be heard to

rebut these presumptions, and a new trial must therefore be granted. *Second.* That even if this first position be not sustained, it does appear that these newspapers were read by at least one juryman, and being so read, prejudice must be presumed from the nature of the newspaper articles, and the juryman cannot be heard to say whether the article had any effect or influence on his mind in forming his verdict; that is, that even if it be held that the juryman may testify as to facts, he cannot testify as to the effect of those facts on his mind.

7. On March 24th, three days after the jury had been discharged from the case, a newspaper of March 15th, a date subsequent to the admonition and order of the court as to excerpting all newspapers that might come into the possession of the jury, was found in the jury-room by the janitor and others. From the time of the discharge of the jury (the 21st) until the finding of this newspaper (the 24th) it does not appear that the room was locked, or that it was not open to whomsoever might come, including the defendant's friends. The newspaper thus found was uncut, and contained comments upon the trial. One of defendant's counsel was present when this paper was found, and called attention to it, and had it marked for identification. This is also assigned as misconduct of the jury, on receiving papers not authorized by the court.

*R. G. Davies,* and *Edward C. Russel,* for Appellant.

The jury received evidence, papers, and documents not authorized by the court. After the jury had been sworn they purchased and read the reports and comments of the newspapers without authority of the court, which reports and comments were of a nature calculated to prejudice the minds of the jury against the defendant, as well as statements of the evidence contained in said reports which were untrue. Newspapers were found in the jury-room after the court had prohibited the papers with accounts of the trial in them to be read. Two of the jurymen swear to having bought the papers and read them. Some courts presume that the objectionable matter was read by the jury. (*Bronson* v. *Metcalf,* 1 Disn. 21; *O'Brien* v. *Merchants' Fire Ins. Co.* 6 Jones & S. 432; *Durfee* v. *Eveland,* 8

Barb. 46; *Clark* v. *Whitaker*, 18 Conn. 548.)  But there is no question in this case but that the jury, or some of them, read the articles in the papers, and if any of them read them it is sufficient. (*Hackley* v. *Hactie*, 3 Johns. 252.) The articles are of the strongest kind it was possible to write against the defendant; they are calculated to influence the jury, and were of the worst kind of communications for a jury to have. The Montana Statutes, page 464, section 354, subdivision first, reads: ". . . . A new trial shall be granted when the jury receives any evidence, papers, or documents not authorized by the court. The court did not authorize the receipt of these papers, and they come within the above provision." (Bassett's Criminal Pleading, p. 332, § 315; *People* v. *Thornton*, 74 Cal. 482; *Palmore* v. *State*, 29 Ark. 254.) In *Carter* v. *State*, 9 Lea, 440, where the bailiff allowed the jury to purchase newspapers having reference to the trial, a new trial was granted. A leading case upon the subject, and one to which the court's attention is particularly called, is the case of *Woodward* v. *Leavitt*, 107 Mass. 453; 9 Am. Rep. 49. This case was ably argued and decided by Judge Gray, one of the ablest judges of Massachusetts and now of the Supreme Bench of the United States. (See, also, 3 Wharton's Criminal Law [6th ed.], p. 559, §§ 3136, 3137; *Walker* v. *State*, 37 Tex. 366; *Commonw.* v. *Landis*, 12 Phila. 576; *Bradbury* v. *Coney*, 62 Me. 223; 16 Am. Rep. 449, and notes; *Hix* v. *Drury*, 5 Pick. 302; *Whitney* v. *Whitman*, 5 Mass. 405; *Alger* v. *Thompson*, 1 Allen, 453; *Hunter* v. *State*, 43 Ga. 524; *Sargent* v. *Roberts*, 1 Pick. 341; *Killen* v. *Sistrunk*, 7 Ga. 294; *McDaniels* v. *McDaniels*, 40 Vt. 363; 11 Graham and Waterman on New Trials, p. 487; Hayne on New Trials, p. 190; *Holton* v. *State*, 2 Fla. 476; *Walker* v. *Hunter*, 17 Ga. 364, 399, 415; *Page* v. *Wheeler*, 5 N. H. 91; *Taylor* v. *Betsford*, 13 Johns. 487; Thompson on Trials, §§ 1955, 2623, 2627; *Brakefield* v. *State*, 1 Sneed, 219; *Williams* v. *Conrad*, 11 Humph. 415.) In criminal, especially capital cases, positive injury to defendant need not be shown if irregularity is satisfactorily proved. (*Eastwood* v. *People*, 3 Parker, Cr. C. 25, 45, 46, 48; *Commonw.* v. *McCaul*, 1 Va. Cas. 271; *Madden* v. *State*, 1 Kan. 340; *Whitney* v. *Whitman*, 5 Mass. 405; *Page* v. *Wheeler*, 5 N. H. 91; *Commonw.* v. *Roby*, 12 Pick. 496; *State* v. *Prescott*, 7

N. H. 287; *State* v. *Turner*, 39 Cal. 370; *People* v. *McKay*, 18 Johns. 212; *People* v. *Douglass*, 4 Cowen, 26; 15 Am. Dec. 432.) The State introduced affidavits of members of the jury, seeking to prove that the newspapers had produced no effect on their minds. "The better view is that the affidavits of jurors can only be received in support of their verdicts where they disclose facts, and not where they disclose mental processes of the jurors." (Thompson on Trials, p. 1995, § 2590. See Thompson on Trials, p. 1993, § 2660; *Woodward* v. *Leavitt*, 107 Mass. 453; 9 Am. Rep. 49; *Taylor* v. *Everett*, 2 How. Pr. 23; *Thomas* v. *Chapman*, 45 Barb. 98.) Another ground of the motion for a new trial was that Nolan, the prosecuting attorney, acted as notary, and in one instance acted out of his county in taking one of the affidavits, the one made by the juror, Cooper. The defendant also objected to the reading of this affidavit on that ground, and offered to prove that fact, but the court refused to permit it and allowed the affidavit to be read, and defendant excepted. This was the same as if a witness had been produced and objection to his competency had been made. No notice was required to make this objection. Nolan should not have taken the affidavits: 1st. Because he was not and could not be a notary public. (1 Am. & Eng. Encycl. of Law, p. 307; Cooley on Constitutional Limitations [5th ed.], p. 748, n.; Const. Mont. p. 31, § 19; p. 37, § 35; p. 9, § 1.) 2d. Because one of them was taken outside of his county. (Comp. Stats. Mont. p. 1075, § 1560.) 3d. Because the two offices are incompatible. (Cooley's Constitutional Limitations [5th ed.], p. 748, n. [this is different from the library edition]; Comp. Stats. Mont. p. 1076, §§ 1572, 1573; p. 869, § 845.) There are no cases in the Montana reports where there was objection made to the introduction of the affidavits of jurors and the question made in this motion decided. There are two cases in which the jurors testified, but no objection appears to have been made. The prisoner should have been allowed to have these jurymen present. (Const. p. 7, § 16.) "Such affidavits should be closely scrutinized, and if the act complained of was of itself misconduct they will receive little weight." (*State* v. *Dolling*, 37 Wis. 398.) The next ground of the motion to which the court's attention is asked,

and on which the court erred in overruling said motion, is: Excluding the evidence that witness Mathilde Laveille said she would commit suicide if Jackson were not convicted. Questions aimed to show bias against defendant should be permitted, and jury is proper judge of such tendency, not the court. (*People* v. *Lee Ah Chuck*, 66 Cal. 662; 1 Greenleaf on Evidence, § 450; Wharton's Criminal Evidence, §§ 475–477; *Harper* v. *Lamping*, 33 Cal. 643; *People* v. *Blackwell*, 27 Cal. 67; *Jackson* v. *Feather R. W. Co.* 14 Cal. 24; *Dun* v. *People*, 29 N. Y. 523; 86 Am. Dec. 327; Best Prin. of Ev. p. 633, n.; *Territory* v. *Paul*, 2 Mont. 314.) The next error complained of is: The court erred in admitting the reading by the State of the whole of the testimony of witness, Mathilde Laveille, taken before the coroner and before the Probate Court, after introduction of part thereof by defense to impeach said witness. Where part of a conversation, testimony, or record is introduced in evidence by one party only, such other parts will be admitted as are relative to or explanatory of the parts read. (*Rouse* v. *Whited*, 25 N. Y. 170; 82 Am. Dec. 337, and note; *Webster* v. *Calden*, 55 Me. 170; Greenleaf on Evidence, § 467, p. 181; *Lynde* v. *McGregor*, 13 Allen, 172; *Houstine* v. *O'Donnell*, 5 Hun, 474; *Forrest* v. *Forrest*, 6 Duer, 124; *Grattan* v. *Metropolitan Ins. Co.* 92 N. Y. 274; *Dutton* v. *Woodman*, 9 Cush. 255; *Commonw.* v. *Keyes*, 11 Gray, 323.) New trial will be granted if illegal evidence or immaterial evidence has been improperly admitted. (Comp. Stats. Mont. p. 468, § 354; *Myers* v. *Malcolm*, 6 Hill, 292; 41 Am. Dec. 744, and note; *Cunliff* v. *Mayor of Albany*, 2 Barb. 194; *Boyle* v. *Coleman*, 13 Barb. 44, and cases cited; *People* v. *Parish*, 4 Denio, 156; *Ellis* v. *Short*, 21 Pick. 145; *State* v. *Allen*, 1 Hawks, 6; 9 Am. Dec. 616.)

*Henri J. Haskell*, Attorney-General, and *C. B. Nolan*, County Attorney, for the State, Respondent.

The first ground of error relied upon is the alleged misconduct of the jurors in reading newspapers calculated to produce upon them an unfavorable influence at the early stages of the trial. The affidavits relied upon do not show, except infer-

entially, that these papers were in fact read.  If the affidavits, however, indisputably showed that such was the case, the affidavits of the jurors rebut the presumption that this misconduct tended in the remotest degree to prejudice the rights of the defendant.  The unquestioned weight of authority is that a verdict will not be set aside because of an irregularity of this kind. The evidence in this case overwhelmingly establishes the fact that the defendant was not prejudiced in any way.  (*Commonw.* v. *Roby,* 12 Pick. 496; *United States* v. *Reid,* 12 How. 107; *Flanegan* v. *State,* 64 Ga. 54; *People* v. *Williams,* 24 Cal. 31; *City of Chicago* v. *Dermody,* 61 Ill. 431; *State* v. *Cucuel,* 31 N. J. L. 251; *Morris* v. *Howe,* 36 Iowa, 490; *Territory* v. *Hart,* 7 Mont. 505; *Territory* v. *Clayton,* 8 Mont. 1.)  The affidavits of the jurors disclose that in the case of eleven of them the accounts which the papers contained were not read by them; and in the case of the twelfth juror the reading was cursory, and no impression ever so evanescent was created.  It is contended that the court erred in not sustaining defendant's motion to strike the affidavits of the jurors from the files upon the hearing on the motion for a new trial.  The authorities hold that the affidavits of the jurors are admissible to sustain a verdict when there is an attempt made to impeach it.  (*Woodward* v. *Leavitt,* 107 Mass. 453; 9 Am. Rep. 49; *Bowler* v. *Inhabitants of Washington,* 62 Me. 303; Merriman and Thompson on Juries, §§ 394, 396, and note 2, p. 496; *Morris* v. *Howe,* 36 La. 490; *Riggins* v. *Brown,* 12 Ga. 271; *State* v. *Underwood,* 57 Mo. 40; Hayne on New Trial and Appeal, § 74, p. 274.)  A diatribe against one the counsel printed in a newspaper and read by one of the jurors does not constitute a ground of error sufficient to set aside a verdict.  (*Hunter* v. *State,* 43 Ga. 524.)  As to the alleged error of the trial court in refusing to sustain the objection of the defendant to the admissibility of the affidavit of the juror, Cooper, because it was taken by Nolan, who was a notary public of Lewis and Clarke County, in Cascade County, the record discloses the fact that the proceedings had upon motion for a new trial were upon affidavit.  The affidavit was regular upon its face and showed that it was taken in Lewis and Clarke County, and the court could not do otherwise than overrule the objection.  (*Orr* v. *Haskell,* 2 Mont. 225.)  It is contended

that because Nolan was a prosecuting attorney he could not act as notary public, under the constitution of the State recently adopted, and that the affidavit of the jurors for that reason should have been rejected upon motion, and that it was error not to do so. To support this, reference is had to section 1, article lv., under the heading, "Distribution of Powers"; but it will be readily seen that this section has no reference to the case at issue. That has reference solely and exclusively to the departments of the government which are co-ordinate, and has no reference to an officer acting in a dual capacity, if it might be so termed. The objection to the interrogatory put to Mrs. Laveille regarding her statement, to the effect that in case Jackson was not convicted she would commit suicide, was properly sustained. The question was certainly too remote for the purpose of showing a prejudice toward the defendant. The sixth ground of error is the admissibility of the testimony of Mrs. Laveille at the preliminary examination, and also at the coroner's inquest, for the purpose of sustaining her credibility, portions of this testimony being introduced for the purpose of impeachment. The very authorities cited in appellant's brief clearly show the competency of this evidence, and that no error was committed by the court in its admission. (*Rouse* v. *Whited*, 25 N. Y. 170; 82 Am. Dec. 344; *Haile* v. *Hill*, 13 Mo. 613.)

DE WITT, J. — The grounds set forth in the above statement are those presented on the argument on appeal, and we will consider them in their order.

1. It is true that the fate of the defendant depended, on the trial, upon the testimony of one witness, Mrs. Laveille. "The direct evidence of one witness, who is entitled to full credit, is sufficient for proof of any fact except perjury and treason." (§ 616, p. 223, Comp. Laws.)

We have diligently, in view of the gravity of the offense and the character of the penalty, examined the 400 printed pages of evidence. Untiring efforts were made by defendant's counsel to impeach, discredit, and contradict the testimony of this one witness. Counsel cite numerous instances of what they claim to be inconsistencies and contradictions. Her testimony is given us in full, by question and answer, as is proper in a

capital case where the verdict depends absolutely upon the truth or falsity of the testimony of one person. In her testimony contradictions may be found by selecting isolated fragments and comparing them with like fragments in other portions of the record. Inconsistencies can be constructed by partially viewing segregated statements. Such can be done with the lengthy testimony of the most learned experts and scientific specialists. The witness here was an unlearned woman, speaking in a foreign language, through an interpreter, making her statements contemporaneous with the tragedy from the maze of overwhelming grief and under terrible excitement. It is impossible, in this opinion, to recite, or even epitomize, the mass of testimony, which occupied in the hearing six days. We can only say that a faithful and painstaking scrutiny of the record reveals the fact, beyond cavil or controversy, that Mrs. Laveille's testimony fully meets the rule of substantial truth with circumstantial variety. We are amply satisfied that her testimony, if true, sustains the verdict. The jury have said it was true. They not only heard her, but saw her, and the manner in which she testified. The court below, in hearing the motion for a new trial, found in the record no substantial attack upon the truth of her testimony. We find nothing upon which we can disturb the decision of that court that the verdict was supported by the evidence.

2. The defendant offered and read in evidence a portion of the testimony given by Mrs. Laveille at the preliminary examination, which had been reduced to writing, read to the witness, and by her subscribed. We are of opinion that it was not error in the court allowing the State to read to the jury the whole of that testimony. The rule is: "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other. When a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (§ 626, p. 224, Comp. Laws.)

3. As to the point that Nolan, county attorney, could not be or act as notary public, counsel refer to article viii., section 19, Constitution, which provides that the qualifications of one to be

county attorney "shall be the same as are required by a judge of the District Court, except that he must be over twenty-one years of age, but need not be twenty-five years of age;" and section 35: "No district judge shall hold any other public office while he remains in the office to which he has been elected or appointed."

It is perfectly clear that the first section cited simply prescribes the requirements for eligibility to election as county attorney as to age, residence, attainments, etc. The second section is a prohibition against a district judge holding another office—a prohibition not including the county attorney. If among the qualifications of one to hold the office of county attorney had been one "that he shall not hold any other office," there might be some force in counsel's contention. Section 31, same article, provides: "No judge of any District Court shall act or practice as an attorney or counselor at law in any court in this State during his continuance in office." This is another prohibition directed against the district judge. As well might counsel insist that this applies to the qualifications of the county attorney. A constitutional regulation as to the conduct of the district judge is not part of the description of the qualifications for office of county attorney. This view of counsel as to the constitution of the State is wholly without merit.

Upon this point counsel also cite section 1, article iv., Constitution: "The powers of the government of this State are divided into three distinct departments—the legislative, executive, and judicial; and no person, or collection of persons, charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Counsel's view of this section must be that Nolan, as county attorney, and Nolan, as notary public, was acting in the exercise of the powers of two of the different departments of the government at once. It is not entirely clear how counsel classes the two positions of Nolan in two different departments. The county attorney is provided for in article viii. on judicial departments. If counsel takes the position that the county attorney

is of the judicial department, then does he mean that as notary public he belongs to the executive or legislative department? The statement of the proposition answers itself.

4. The court properly denied the motion of the defendant to strike out the affidavit proposed to be used by the county attorney on the motion for a new trial. The State had no notice of such motion. Defendant declined to give any, and insisted that the hearing of the motion for new trial should proceed forthwith. The State was entitled to some intimation that the defendant objected to the formalities in the taking of this affidavit prior to the moment of the hearing of the motion for the new trial. (*Murray* v. *Larabie*, 8 Mont. 213.)

5. We are of opinion that the court properly excluded the interrogation to Mrs. Laveille whether she said that she would suicide if Jackson were not convicted. It is apparent from the context of the examination at that point, and it is now insisted by defendant's counsel, that the question was asked for the purpose of showing prejudice by the witness against the defendant. It is not at all apparent that such statement, if it were made, and such sentiment, if it existed, would indicate any prejudice. The witness had already just frankly admitted the existence of ill-feeling towards defendant. We consider the matter offered wholly immaterial, and its exclusion no injury to defendant.

6. "A new trial shall be granted when the jury receive any evidence, papers, or documents not authorized by the court." (§ 354, Crim. Prac. Act.)

Defendant's counsel construes the word "papers," above, to mean "newspapers"; and from that premise he argues that if a juryman receives a newspaper containing comments upon the trial, the verdict *ipso facto* must be set aside. If the word "papers" means "newspapers," counsel need not qualify the word by adding, "containing comments on the trial." If he reads the statute liberally, or by supplying the word "newspaper" for "paper" therein, then the reception of a newspaper would, in itself, vitiate the verdict. We are of opinion that the word "papers" in the statute does not mean "newspapers," or, perhaps, even include them. The statute is not a prohibition against the jury receiving evidence, papers, or documents. Cases

are tried upon evidence, papers, and documents (using the word "papers" in the sense of written instruments or documents). But the jury shall receive only such evidence, papers, and documents as are authorized by the court. Cases are not tried upon newspaper comments or arguments. Such cannot become evidence under any circumstances. It would be an idle thing for the statute to say that no newspaper argument shall be received by the jury except those authorized by the court. Such newspaper lubrications could never be authorized by the court. Cases are presented to juries in another manner, by evidence and oral argument in open court. Counsel would construe the statute to make it prohibit the jury from hearing or reading, *ex parte*, private newspaper argument of a case. Of course, they shall not hear such, or determine cases in that manner. To do so is such an infraction of constitutional and established rights of jury trial that we cannot believe that the legislature went so far from the subject as to intend to prohibit, in this section, that which is otherwise so amply inhibited by the whole system of criminal procedure.

The intent of this section is clear to us. The word "papers" occurs in context, between the words "evidence" and "documents." It refers to something, as written instruments, for instance, which might be competent testimony if scrutinized by the court, and found by the court to be competent, under the rules of evidence, and then authorized by the court to be introduced. If it gets to the jury without such authorization, it falls within the purview of the section being considered. Papers, documents, and written instruments are all, under some circumstances, evidence. Newspaper comments are never such. If the statute had used simply the word "evidence," it would have been sufficient. The addition of the words "papers" and "documents" simply makes it more explicit in the way of definition. The intent of the statute is simply to provide that evidence, whether oral, written, printed, or contained in papers or documents, shall not go to the jury without passing the scrutiny of the court as to its competency, etc., and undergoing the criticism of the argument of counsel.

We do not justify the reception by the jury of newspaper comments. We only hold that this offense by a jury does not

fall within the inhibitions of this section (subd. 1, § 354, Crim.
Prac. Act), but is governed by another division of the section
noticed *infra.*

We have gone into this discussion in order to lay the founda-
tion for our view, that the simple reception by a juror of a
newspaper does not *ipso facto* vitiate the verdict, but that such
reception must be considered as any other misconduct of a jury,
and be treated by the rules governing cases of misconduct. The
section of the law applicable is section 354, subdivision 2, Crimi-
nal Practice Act. "A new trial shall be granted when the jury
has been separated without leave of the court, or have been guilty
of any misconduct, tending to prevent a fair and due consider-
ation of the case."

There is a conflict in the decisions of courts as to the rules
applicable to determining the question of setting aside a verdict
for alleged misconduct of the jury in a criminal case. An extreme
view is, that misconduct tending to show injury to defendant
being shown, prejudice will be absolutely presumed, and a new
trial granted, and the jurors will not be heard to deny the
alleged facts of misconduct. This doctrine has not been adopted
in this court. (*Territory* v. *Hart*, 7 Mont. 489; *Territory* v.
*Clayton*, 8 Mont. 1.) The position towards which this court
tends in those cases, and which we now apppove, is that if
misconduct be shown, tending to injure defendant, prejudice
to the defendant is presumed, but not absolutely. The State
may remove that presumption, and the burden is upon it
to do so, and in so doing, it may use the testimony of the
jurors to show facts which prove that prejudice or injury did
not or could not occur. For example, if a juror is tempo-
rarily separated from his fellows, by illness or the exigencies of
nature, he may show that during such separation he saw or
talked to no one, and that no influences were brought to · bear
upon him of any character. This court, however, has never
held, and does not now hold, that if the contact of the juror
with outside, prejudicial influences be clearly demonstrated and
uncontroverted, the juror may purge himself by testifying that
such influences did not affect his judgment in forming his ver-
dict. This principle is well reviewed by Mr. Justice Gray in
*Woodward* v. *Leavitt*, 107 Mass. 453.

In the case before us it is clearly shown that only one juror read the objectionable newspapers. For the purposes of this decision we will not consider his affidavit that he was not influenced thereby. The difficulty is soluble on other grounds. The reason for holding that the reading by jurymen of newspaper accounts and comments adverse and prejudicial to defendant vitiates a verdict, is that they are *ex parte* arguments and presentations of the case, made out of court, not under oath, made irresponsibly, not answerably by defendant by evidence or argument, and not subject to the rules of court as to admission of evidence and the proper argument of counsel.

The efforts of learned and zealous counsel for the State, in open court, are far more dangerous to a defendant than the diatribe of any newspaper; but they are made under the eye of a vigilant court, under the established rules of procedure, and with the ever-present opportunity of the defendant to put a telling shot under the armor of the State wherever a joint is left loose.

In the case at bar the newspaper was read by the jurymen the second or third day of a six days' trial, before the State had closed its evidence, and before the defendant had opened his defense. The attention of the court was called to the matter, and the judge immediately animadverted upon it in the presence of the jury. The jury had opportunity to be fully advised by the court, and to learn that the newspapers, and all their comments, should be excluded from their consideration. They were thereafter so excluded, and, indeed, at no time did the jurymen ever discuss them. After this admonition by the court, they heard evidence for four days, including the whole of the defense, as well as the arguments of defendant's counsel, who had full opportunity to score the newspapers.

A juror examined upon his *voir dire* may have read the most violent and prejudicial newspaper attacks upon the defendant, and have formed an opinion of the guilt of defendant, and still he is a competent juror if he "state on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, and the court is satisfied that he is impartial and will render such verdict." (§ 287, Crim. Prac. Act.) The day has passed when blank ignorance and stupidity

in a juryman were his best qualifications for service. There is more intelligence on the modern jury; and intelligent persons, the statute contemplates, are able to read contemporary history, and still preserve their mental balance.

On the trial of a case, highly improper and incompetent testimony may accidentally fall from the lips of a sworn witness on the stand. This occurs in nearly every trial. Such evidence is stricken out by the court, and the jury instructed to disregard it. The court herein had equal opportunity to correct any possible evil influence of the newspapers.

If these newspapers had gotten to the jury after they retired for deliberation; if the court never had known of the fact, and never had opportunity to admonish the jury; if it had been too late for the jury to hear the defendant's evidence and the arguments of his counsel, the possibility of injury and prejudice would be more apparent.

The ultimate inquiry for the court is, whether prejudice or injury has occurred; whether the same be by an absolute presumption, or by a view of facts presented by competent testimony. Cases must rest, to some extent, upon their own particular facts. Under all of the facts of the case at bar we cannot hold that prejudice or injury must be absolutely presumed, and we cannot hold that they in any manner appear.

7. The last point contended for by appellant scarcely calls for notice.. Three days after the jury had been discharged, and had abandoned their room, a room, for all that appears, open to every one, and, in any event, open to the janitor and one of defendant's counsel and another person, a newspaper was found in that room, unmutilated, of date March 15th. This has not the slightest tendency to prove that a juryman ever saw it.

There has been a warm contention in this case over the conduct of newspapers in commenting upon the trial during its progress. The Helena Journal, published March 13th, has the following head lines: "Evidence Given that is likely to Hang Jackson. Mrs. Laveille's Convincing Story. Looks Bad for Jackson." The article says, among other things: "Jackson sat through the process of weaving the rope that shall stretch his neck with apparent unconcern and smiling indifference;"

"Cumulative evidence that Jackson should be hanged;" "The halter draws," etc. This paper also contains the following, in reference to one of defendant's counsel: "His chances for hanging have been materially augmented by the addition of a certain Casey to the lawyers for the defense. Casey has no seat at the table for counsel, but crowds himself up against their chairs, and confers with the amateur short-hand writers, occasionally interfering with the work of Messrs. Davies and Russel."

We cannot leave this decision without a further word. Newspapers occupy a magnificent place in modern civilization. In England, the press has been called "the fourth estate of the realm." With all their faults, even with their occasional venality, and their vice of the adulteration of intelligence for ulterior purposes, newspapers are one of the bulwarks of liberty. The freedom accorded them in the discussion of all matters sends vice blushing into seclusion, makes the rogue in high places tremble for his security, and the public robber hesitate in his depredations. Journalism calls to its service the best intellectual effort of the earth.

But let it remember that the citizen is innocent until a jury of his countrymen pronounce him guilty. However humble his station, and however crime-stained he appear, he is a citizen and an innocent man until he is found to be otherwise by the machinery of the law which the people have set up to determine that fact. He is not to be tried by hue and cry, or by newspaper harangue. The wisdom of centuries has provided a method of trial which the people of this land have sanctioned by solemn constitution. Let that method prevail.

The lapses of the newspapers in this case were doubtless through inadvertence. But they might have occurred at a time when they would have worked an injury to a fellow-citizen on trial for his life, and in the eye of the law, as yet innocent as if he were in the highest of earth's stations. It is hoped that hereafter, when criminal cases are on trial, the machinery of the courts will be left undisturbed to work out the equal and exact justice which their creation and existence contemplate.

The judgment of the District Court, and the order denying a

motion for a new trial, are affirmed; and it is directed that the judgment be carried into effect as entered in the court below.

BLAKE, C. J., and HARWOOD, J., concur.