MR. CHIEF JUSTICE HASWELL
delivered the opinion of the court.
Each of the four defendants was convicted of deliberate homicide in the death of five year old James Gill following a jury trial. Each defendant appeals from the judgment of conviction and denial of a new trial. We affirm all convictions.
The evidence showed that all four defendants were members of the River of Life Tabernacle Church at Poplar, Montana, and that James Gill was the son of defendants Jennifer Gill and Grady Gill. Adult members of this organization took turns being responsible for and supervising the.children of the other members.
On Thursday, January 8,1981, defendant Poole was taking care of the children, including James Gill, at the trailerhouse of Art Riley, another church member. At lunch James refused *292 to eat a baloney sandwich and vomited. Poole took James into the back bedroom and spanked him with a fiberglass stick an undetermined number of times. Poole also put James in the shower.
The next morning the children were taken to the trailer where defendants Grady and Jennifer Gill lived. They were fed breakfast but James refused to eat. Grady Gill told him that if he didn’t eat he would get a spanking. James still wouldn’t eat so Grady Gill struck him on the legs with his belt and, as James ran past Gill into the bedroom, he struck him again on the buttocks. Grady Gill and Jennifer Gill then pulled James out from under the bed and Grady Gill struck him four more times, twice of which were with the belt. He also placed James in the shower.
On the evening of that day (January 9), the children returned to the Riley trailer and were fed supper. James refused to eat the baloney sandwich he had been given the night before and defendant Powers, who was in charge of the children, struck James numerous times with the fiberglass stick and an electrical cord. He also placed him in a cold shower a couple of times.
At approximately 12:30 a.m. the next morning (January 10, 1981), Art Riley took James to the emergency room at the Poplar Hospital mid James was pronounced dead a few minutes later. After the Roosevelt County undersheriff and the county attorney were informed of the matter, the under-sheriff went to Riley’s trailer at about 3:30 that morning. Defendant Poole answered the door and voluntarily discussed the matter with the undersheriff. Poole described James as a rebellious child and stated that although all children were evil on the inside, the church was developing a more perfect child through chastisement.
Subsequently, the county attorney filed an amended information charging defendants with deliberate homicide and purposely or knowingly causing, or in aiding or abetting, James’ death. Prior to trial, Powers moved for the appointment of an investigator, which was denied.
*293 At trial the prosecuting attorney informed the court that he would not seek the death penalty and the court, over all defendants’ objections, ruled that each defendant would be limited to six peremptory challenges to the prospective jurors and one for the alternative juror. Dr. Mueller, who performed the autopsy, testified there were about 150 bruises on the victim’s body, 75 percent of which had been inflicted within 48 hours prior to death. The doctor referred to various color photographs taken during the autopsy, which were admitted into evidence. Also at trial, the undersheriff testified as to his conversation with Poole (Poole did not testify) and the court admitted testimony of prior acts against the victim and other children by members of the church other than defendants.
The jury found all four defendants guilty of deliberate homicide. Powers was sentenced to 60 years in the State Prison, Grady Gill to 20 years with 12 years suspended, Poole to 10 years with 4 years suspended, and Jennifer Gill received a 20 years suspended sentence.
The following specifications of error are raised on appeal:
1. Error in admitting color photographs in evidence.
2. Error in limiting defendants to six peremptory challenges of prospective jurors and one for the alternate juror.
3. Error in denying Powers’ motion for an investigator.
4. Failure of the State to prove beyond a reasonable doubt that defendants “purposely or knowingly” caused the death of James Gill.
5. Error in admitting testimony of prior acts of violence committed by persons not defendants against the victim or other children.
6. Denial of defendants’ right of confrontation by allowing the undersheriff to testify regarding Poole’s statements to him.
Initially, we find the trial court properly admitted the color photographs of James Gill’s body. State’s exhibits 16,24 and 25 were admitted without objection. Defendants did not object to State’s exhibits 1 thru 5 except to request the court to postpone a ruling until the other photos had been received *294 so there is no basis preserved for appellate review of those photographs.
The remaining photos were also properly admitted because their probative value outweighed any possible prejudicial affect in light of Dr. Mueller’s testimony. With regard to several of the pictures, the following conversation occurred between Dr. Mueller and the court:
“THE COURT: Am I right in believing that you looked through these pictures and you do feel the ones that you have there that are being offered, are necessary for you to fully describe what you actually found in the course of your examination? A. Yes.
“THE COURT: All right, 17, 21 and 22 will be admitted.” Dr. Mueller also testified the pictures accurately represented the victim’s appearance at the autopsy and were reasonably necessary to depict the multiplicity and extent of the injuries, how they were caused and their age.
Defense counsel argues that the pictures were improperly admitted and cites State v. Bischert (1957), 131 Mont. 152, 308 P.2d 969. In Bischert, we reversed and remanded the case for a new trial because the testifying doctor did not need the pictures to explain his findings and the pictures showed burns on the baby’s skin which were in no way related to the crime charged (manslaughter by starvation).
Here, however, the amended information charges defendants with the beating and mistreatment of James Gill. The pictures taken at the autopsy are relevant and material to this charge. Their probative value outweighs their prejudicial effect. See State v. Hoffman, (1982), Mont., 639 P.2d 507, 39 St.Rep. 79, (pathologist’s color slides were properly admitted) and State v. Warrick (1968), 152 Mont. 94, 446 P.2d 916 (color photographs were properly admitted).
Appellants’ second specification of error relates to limiting each defendant to six peremptory challenges and one for the alternate juror. This action was taken after the prosecutor informed the District Court that it would not seek the death penalty if the defendants were convicted. Appellants argue that since this was a capital case, they were entitled to 8 *295 peremptory challenges under section 46-16-305, MCA, which states in pertinent part:
“Peremptory challenges. Each defendant shall be allowed eight peremptory challenges in capital cases . . .”
At the outset, we held that defendant Powers cannot now be heard to complain because he waived his sixth challenge and thus did not exhaust all the peremptory challenges to which he was entitled.
Additionally, there is ample authority for the proposition that when the prosecutor and court agree that the death penalty will not be sought, it will not be considered a capital case in determining the number of peremptory challenges to which a party is entitled. In United States v. Maestes (10th Cir. 1975), 523 F.2d 316, the court held that the lower court acted properly in limiting defendant’s peremptory challenges when the prosecutor disclaimed the possibility of the death penalty being imposed. Under the applicable statute, the defendant was entitled to 20 peremptory challenges for a crime punishable by death and the trial court limited him to 10. In accord: United States v. Martinez (9th Cir. 1976), 536 F.2d 886; People v. Holmes (1974), 19 Ill.App.3d 814, 313 N.E.2d 297; and State v. Leonard (1978), 296 N.C. 58, 248 S.E.2d 853.
With regard to the third issue, defendant Powers argues that the trial court’s failure to appoint him an investigator deprived him of his right to effective assistance of counsel and to a fair trial by an impartial jury. Defendant’s motion for an investigator was largely based on the fact that the State’s witnesses were located in several states and numerous counties.
Powers’ motion for appointment of an investigator was properly denied. Powers was notified 19 days before trial what the testimony of out-of-state witnesses would be. Also, Powers’ counsel was given a full opportunity to interview the witnesses prior to trial and their statements had previously been provided. Their testimony was summarized in various court documents, including the supplemental affidavit in support of amended informations.
*296 Powers’ motion for an investigation states in conclusory fashion that “. . . unless an investigator is appointed in this case to assist Defendant’s counsel the Defendant would be effectively deprived of an opportunity to conduct a defense against any testimony offered by these witnesses.” This does not allege sufficient grounds to justify the motion. See State v. Dillon (1970), 93 Idaho 698, 471 P.2d 553. In any event, at trial Powers attempted to shouldér all the blame for the victim’s death (against counsel's advice) so the appointment of an investigator would have been a useless act.
Appellants next specification of error relates to the sufficiency of the evidence to prove the required mental state. The defendants here were charged with deliberate homicide and the pertinent parts of our statute relating thereto are set out below:
“45-5-101. Criminal homicide. (1) A person commits the offense of criminal homicide if he purposely, knowingly, or negligently causes the death of another human being.
“(2) Criminal homicide is deliberate homicide, mitigated deliberate homicide, or negligent homicide.
“45-5-102. Deliberate homicide. (1) Except as provided in 45-5-103(1), criminal homicide constitutes deliberate homicide if:
“(a) it is committed purposely or knowingly . . .
“45-2-101. General definitions . . .

ÍÍ

“(33) ‘Knowingly’ — a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as ‘knowing’ or ‘with knowledge’ have the same meaning.
*297 “(58) ‘Purposely’ — a person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense. Equivalent terms such as ‘purpose’ and ‘with the purpose’ have the same meaning.” (Emphasis added.)
Montana’s accountability statute provides in pertinent part:
“45-2-302. When accountability exists. A person is legally accountable for the conduct of another when:
“(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.”
The State argues that they need not prove a specific intent to kill to prove deliberate homicide, reasoning that the defendants engaged in a common design or course of conduct to accomplish an unlawful purpose (child abuse or assault). In so doing the State argues that defendants acted “knowingly,” as defined in our statutes, because they were aware of the high probability that death would result from the repeated and escalating violence and beating of the victim.
The State further contends that the Montana accountability statute was adopted from the Illinois accountability statute and interpretations thereunder indicate that where codefendants undertake a course of conduct or common design which results in a persons’ death, all can be held criminally responsible for the murder. People v. Spagnola (1970), 123 Ill.App.2d 171, 260 N.E.2d 20; People v. Johnson (1966), 35 Ill.2d 624, 221 N.E.2d 662; People v. Richardson (1965), 32 Ill.2d 472, 207 N.E.2d 478. Here, the defendants all adhered to the policy of the church to impose severe discipline and committed themselves to that policy by their own acts.
*298 We agree with the State’s reasoning. For example, the evidence clearly shows that defendant Poole beat the victim with a fiberglass stick and put him in the shower after the victim vomited at lunch Thursday. In Poole’s statement to the undersheriff he indicated that he, in furtherance of their church policy, was chastising children so as to produce a more perfect child. This is sufficient under the Spagnola reasoning.
With regard to Jennifer Gill, the evidence shows that during the victim’s last 48 hours, (wherein, according to Dr. Mueller’s testimony 75 percent of the bruises were inflicted) she did not inflict any discipline on the victim. However, the evidence brought out at trial showed that some of the victim’s injuries were located on his head and face and thus readily visible to all defendants including his mother. Further, she testified that James had been coughing and vomiting prior to his death. Also, she was present at several times when James was disciplined (including when her husband struck James several times with his belt the day before he died) and did nothing to halt the beatings or provide medical care.
In State v. Mally (1961), 139 Mont. 599, 366 P.2d 868, we quoted from an earlier case which stated that whether death caused by neglect is murder or manslaughter under the old criminal statutes depends on the nature and character of the neglect. From the evidence adduced in this case, the jury could have concluded that Jennifer Gill aided and abetted the other defendants in causing the victim’s death by her failure or refusal to perform her duties as a parent, terminate the beatings and discipline, and provide the victim with needed medical care and attention. Her conviction of deliberate homicide can be sustained under Spagnola, supra. In accord: State v. House (1971), 260 Ore. 138, 489 P.2d 381 (indictment was sufficient to charge defendants with first degree murder where it alleged defendants refused to provide their child with food and medical care); Harrington v. State (Tex.Cr.App.1977), 547 S.W.2d 616 (defendant’s conviction for murder of her child by starvation upheld on appeal); Zessman v. State (1978), 94 Nev. 28, 573 P.2d 1174 (husband’s and wife’s *299 convictions for second degree murder of their child by starvation and dehydration upheld on appeal).
Defendants next argue that the District Court erred in admitting testimony of prior acts of violence committed by persons not defendants against the victim or other children. Initially, defendant Powers’ failure to object to this issue at trial bars his raising it on appeal. The District Court properly overruled the other defendants’ objections to this evidence.
Evidence of the acts by church members other than defendants, and acts by the defendants against children other than the victim, show the common design toward disciplining children by beatings arising out of the church policy. It ties these defendants to that policy by showing the similarity of methods and discipline practiced by church leaders and these defendants.
Additionally, Rule 404(b), Mont.R.Evid. provides as follows:
“(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
The evidence at issue here provides proof of these defendants’ motive for inflicting the punishment on the victim and the plan and intent behind the treatment of him.
Defendants’ final argument claims that they were denied their right of confrontation by the trial court allowing the undersheriff to testify regarding Poole’s statements to the undersheriff. Poole did not testify at trial and consequently does not raise this issue here. The other defendants argue that the rule of law laid down in Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, has been violated. In Bruton, evidence was admitted of one defendant’s confession which indicated involvement of the codefendant. The person making the confession did not testify and the Supreme Court found that his codefendant’s Sixth Amendment rights were violated.
*300 No doubt the admission of the undersherifFs testimony regarding Poole’s statements to him violated the Bruton rule. Nonetheless, all Bruton errors do not require reversal. Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Schneble v. Florida (1972), 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340. Bruton, supra, states that a criminal defendant is entitled to a fair trial, but not a perfect one as there are no perfect trials. In acccord, Lutwak v. United States (1953), 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Brown v. United States (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208; Michigan v. Tucker (1974), 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182.
The real issue here is whether the error is harmless, not affecting the merits, or prejudicial error requiring reversal. The following excerpt of the undersherifFs testimony illustrates the gist of defendant Poole’s statements to him:
“A. (By Mahlum) I asked Mr. Poole how the chastisement would be done, after he mentioned that to me, and he stated with the rod, and after he mentioned to me, and described James Gill to me, I asked him if he personally had done that, and he answered yes on occasion that he had with his hand and other objects.
“Q. (By Mr. Racicot) That he had in fact chastised James Gill? A. Yes.
“Q. Did he talk about why this chastisement was necessary? Why it was necessary with the rod? A. Mr. Poole advised me that it was his feeling there were no perfect children, although they were working at developing that type of a child, and that was the reason for the chastising.”
The foregoing testimony simply suggests the adherence of the defendants to the Church’s policy of strict discipline of children and the effectuation of such policy by defendants’ acts and omissions. The proof of these facts by independent admissible evidence is overwhelming. The tendency of Poole’s statement to incriminate the other defendants is insignificant in the light of the ambiguity of the statement itself in identifying the defendants and in the light of stronger independent evidence of motive.
*301 The federal constitutional test for harmless error is whether there is a reasonable possibility that the evidence complained of might be contributed to the conviction, Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; or stated another way, whether the reviewing court can declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Montana statutes provide that no cause of action shall be reversed by reason of any error committed by the trial court unless the record shows that the error was prejudicial (section 46-20-701, MCA) and that any error which does not affect substantial rights shall be disregarded (section 46-20-702, MCA). We declare a belief measured by any of these tests that the error was harmless beyond a reasonable doubt; that there is no reasonable possibility that the evidence complained of might be contributed to defendant’s conviction; and that the error does not affect the substantial rights of any of the defendants.
Affirmed.
JUSTICES DALY HARRISON, MORRISON and WEBER concur.