No. 83-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN HARVEY COUNTS, SR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cok & Wheat; Michael D. Cok, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Wm. Nels Swandal, County Attorney, Livingston,
Montana

Submitted on Briefs: December 8, 1983

Decided: April 19, 1984

Filed: APR 19 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Following a jury trial in the District Court of Park County, defendant was convicted of the offenses of aggravated assault and attempted aggravated assault under sections 45-5-202(1)(a)&(c) and 45-4-103(1) ☒, MCA. He was sentenced to five years in the penitentiary for each offense. The terms were to be served concurrently with the last three years of each sentence suspended. He was also sentenced to a consecutive two-year term for the use of a firearm. Defendant appeals. We affirm the judgment of the District Court.

The sole issue presented is whether the District Court erred in denying the defendant's motion for a mistrial on the grounds of a juror's communication during lunch with a key prosecution witness.

The criminal offenses occurred in Park County at the home of Mrs. Girdler. Defendant and his nephew were visiting Mrs. Girdler on the morning of September 23, 1982. The State's evidence is summarized as follows. John Renbourne, a neighbor of the Girdlers, arrived at the Girdler home to deliver some photographs. As Renbourne approached the house, he met defendant and his nephew. Renbourne extended his hand in greeting to defendant, but defendant struck Renbourne, knocked him to the ground and repeatedly kicked him. Mrs. Girdler witnessed the incident. When she screamed, the defendant ceased the kicking. After Renbourne had gone into the Girdler home to clean his wounds, defendant pulled a gun out of his pocket and pointed it at Renbourne.

Defendant's testimony was corroborated by his nephew. Defendant admitted striking and kicking Renbourne and also pulling his gun on Renbourne. He claimed that these acts were justified by self-defense. Defendant testified that Renbourne approached him with a gun, that Renbourne was fighting and kicking him, and that he pulled the gun because Renbourne said: "Shoot me, shoot me, shoot me or I will kill you."

2

No question is raised as to the sufficiency of the evidence to convict on both counts charged. The sole issue pertains to alleged jury misconduct involving Mrs. White, a juror, and Mrs. Girdler, who testified as a witness for the prosecution. During the lunch recess on the first day of trial, juror White and her husband were seated at a restaurant in Livingston. Mrs. Girdler came in and was invited by Mrs. White to join them for lunch. They spent about thirty minutes having lunch. Both Mrs. White and Mrs. Girdler testified that their conversation did not concern the defendant or the trial.

Both the District Court and counsel for the defendant questioned Mrs. White and Mrs. Girdler at length. Because of the possible appearance of improper conduct, we set forth significant portions of the examination by the court of juror White and witness Girdler:

"THE COURT:    Mrs. White, it has been mentioned here that at the last recess just before noon that someone had seen one of the lady jurors talking to Mrs. Girdler as they were leaving. Do you know Mrs. Girdler?

"MRS. WHITE:    Yes.

"THE COURT:    Did you speak with her at all here at the courthouse this morning?

"MRS. WHITE:    No.

"THE COURT:    No conversation?

"MRS. WHITE:    Not today at all. I had a conversation with her yesterday.

"THE COURT:    Did that in any way concern the case?

"MRS. WHITE:    No, never mentioned it.

"THE COURT:    Where did that conversation take place?

"MRS. WHITE:    At the restaurant yesterday noon. She came in while we were eating and sat with us.

"THE COURT:    And was there any mention on anyone's part about the case?

"MRS. WHITE:    No.

3

```
"THE COURT:        And was it just a chance meeting
                  that she happened to come in the
                  same restaurant?

"MRS. WHITE:       We were sitting there and she just
                  come in and we asked her to sit
                  with us.  I didn't know that you
                  can't talk.  We didn't talk any-
                  thing about the case at all.

"THE COURT:        That is what we want to make
                  certain.  And you haven't formed
                  any opinion in any way just from
                  having lunch with her, have you?

"MRS. WHITE:       No, nothing.

"THE COURT:        Did you know Mrs. Girdler prior?

"MRS. WHITE:       I have known her since she was a
                  little girl, sure.  Not, you know,
                  not real well, just known her.

"  .  .  .

"THE COURT:        I want to make it just as clear,
                  Mrs. White, the meeting yesterday
                  was just by chance and there was
                  absolutely no mention whatever of
                  this case?

"MRS. WHITE:       No. I can't even remember what
                  we talked about.

"THE COURT:        And none of the testimony and none
                  of the witnesses were mentioned or
                  discussed?

"MRS. WHITE:       No.

"THE COURT:        The defendant, Mr. Counts' name,
                  didn't come up at all?

"MRS. WHITE:       No."
```

The testimony by the witness, Mrs. Girdler included the following:

```
"THE COURT:        It was also mentioned that yester-
                  day you met or saw Mrs. White at
                  lunch time?

"MRS. GIRDLER: I did.

"THE COURT:        Where was that?

"MRS. GIRDLER: At the restaurant, Windy's
                  Restaurant.

"THE COURT:        At Windy's?

"MRS. GIRDLER: Yes.

"THE COURT:        Did you sit down at lunch time?

"MRS. GIRDLER: We sat down at lunch time.

"THE COURT:        Were there others present?
```

4

"MRS. GIRDLER: Her husband.

"THE COURT:    Just the three of you?

"MRS. GIRDLER: Yes.

"THE COURT:    And how long were you together
               at that time?

"MRS. GIRDLER: Well, we ate lunch, approximately
               30 minutes, because I had some other
               errands to do and I had to be back
               here by ten to 1:00.

"THE COURT:    How did it happen that you were
               together there at lunch?

"MRS. GIRDLER: I walked into the restaurant and
               they invited me to join them.

"THE COURT:    They were already there?

"MRS. GIRDLER: Yes.

"THE COURT:    It was not a planned meeting?

"MRS. GIRDLER: No.

"THE COURT:    Have you known Whites for quite
               some time?

"MRS. GIRDLER: A long time.  I went to school with
               their son.

"THE COURT:    Now, again with your witness' oath
               in mind, Mrs. Girdler, did the
               substance or facts of this case
               against Mr. Counts in any way at all
               come up for discussion?

"MRS. GIRDLER: No, because when we sat down we both
               agreed there was no way we would
               discuss the trial, and it was a
               relief to me to sit down and forget
               about it.  We didn't touch it.

"THE COURT:    There was absolutely nothing said?

"MRS. GIRDLER: No.

"THE COURT:    No indication of how you felt or how
               they felt?

"MRS. GIRDLER: No, no way."

Defense counsel also interrogated the witness and failed to

find any indication that the luncheon conversation in any way

concerned the trial of the case or the defendant.

The acquaintance between Mrs. White and Mrs. Girdler had

been disclosed in the course of the voir dire.  In response

to questioning by counsel, Mrs. White indicated that she had

known Mrs. Girdler and her folks for a long time, that it was

5

just an acquaintance and that anything she knew about Mrs. Girdler would not influence her decision about Mrs. Girdler's testimony. Mrs. White was not challenged by defense counsel during the voir dire.

The essential contention of the defendant is that, based upon Turner v. Louisiana (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, a new trial is warranted because of the interaction between the juror and a witness for the State. In the Turner case, two deputy sheriffs who were key prosecution witnesses were also in charge of the jurors. The Court emphasized that this was a continuous and intimate association throughout a three day trial. Defendant contends that here, as in Turner, a new trial should be granted because of the lunch together, the possibility of communication, the appearance of impropriety, and the social interaction between the juror and the witness.

Immediately prior to the luncheon in question, the District Court admonished the jury as follows:

> "The jury is admonished not to discuss this case among yourselves whatsoever, or with anyone else, until it is finally submitted to you, and to form no opinion whatever about it. You may leave to go home for lunch, but don't discuss it with your husbands or wives or family or anyone else until it is finally submitted to you."

The record does not disclose that juror White discussed the case with Mrs. Girdler or anyone else.

The ruling of the District Court on a motion for mistrial is not to be lightly disturbed. As we stated in Schmoyer v. Bourdeau (1966), 148 Mont. 340, 420 P.2d 316:

> "We hold that once the District Court has considered the matter, however it is raised, whether on a question for mistrial or motion for a new trial this court will not lightly disturb that ruling. To overthrow it this court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling." 148 Mont. at 343, 420 P.2d at 317-18.

In this state, if jury misconduct is shown tending to injure the defendant, prejudice to defendant is presumed. However, this presumption is not absolute and may be rebutted

6

by testimony of the juror showing facts which prove that prejudice or injury did not occur. See State v. Eagan (1978), 178 Mont. 67, 79, 582 P.2d 1195, 1202 and cases cited therein. In the present case, any presumption of prejudice arising from the unusual circumstance of a lunch between a juror and a principal witness has been overcome by the testimony of both the juror and the witness during the course of the trial and prior to the submission of the case to the jury.

We conclude that the defendant has failed to set forth facts justifying a reversal. In reaching this conclusion, we were guided by the analysis of both facts and law contained in State v. Dickens (Mont. 1982), 647 P.2d 338, 39 St.Rep. 1137. In Dickens several of the witnesses apparently talked to several members of the jury. No record was made of any conversation. Factually Dickens is similar to the present case in that there is evidence of communication between a witness and a juror, but a total absence of evidence showing that anything prejudicial to the defendant occurred during the communication. In analyzing both the facts and the law in Dickens, this Court stated:

> "The first instance of alleged misconduct took place, according to the appellant, during the trial when several members of the jury were seen, by several of appellant's witnesses, facing some of the prosecution's witnesses and moving their mouths. It is not clear from the record whether any conversation was actually heard, but the appellant's witnesses did testify during the motion for a new trial that it 'appeared' some communication took place.
>
> . . .
>
> ". . . [T]his type of communication, a possibility at best, is not sufficient reversible error. In Turner v. Louisiana (1965), 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, a case cited as controlling on this issue by appellant, the United States Supreme Court held that a verdict can be reversed if it can be shown that communications of a dubious nature take place between prosecution witnesses and jurors. A review of the facts in Turner reveals that what consisted of reversible error there is a far cry from what transpired in the present case. In Turner, the two key prosecution witnesses were deputy sheriffs who were also in charge of the jurors. The Court noted:

"'. . . We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial -- an association which gave these witnesses an opportunity, as Simmons (one of the deputies) put it, to renew old friendships and make new acquaintances among the members of the jury.' 85 S.Ct. at 550.

"There is a distinction drawn by the United States Supreme Court between a 'brief encounter' and an 'intimate association' and that distinction is applicable here. At best, the record reflects some innocuous type of conversation . . . There was, quite simply, not enough evidence presented by appellant to warrant a new trial. Charlie v. Foos (1972), 160 Mont. 403, 503 P.2d 538." 647 P.2d at 341-42, 39 St.Rep. at 1140-41.

We emphasized in Dickens, as the United States Supreme Court did in Turner, that a continuous and intimate association throughout a three-day trial is a basis for reversal. We also emphasized that there was a real distinction between such contacts over a period of three days, as in Turner, and the possibility of some communication between the witnesses and the jurors, as in the Dickens case. In a similar manner here, we do find the same type of a continuous and intimate association which was found to be improper in Turner.

We have carefully reviewed the transcript with regard to the evidence on the part of Mrs. Girdler. There has been no attack by the defendant on the credibility of this witness and, in fact, no real disagreement with the testimony on the part of the witness. No suggestion has been raised by the defendant that any benefit accrued to the State by virtue of the luncheon between Mrs. Girdler and the juror. Essentially the evidence of Mrs. Girdler stands uncontradicted.

We conclude that in the present case there was no communication of a dubious nature between the prosecution witness and the juror. There has not been the degree of impropriety which requires the drastic remedy of a new trial. While we do not condone lunches between witnesses and jurors, we conclude that here there was no communication related to the defendant's case. We therefore find no basis for a reversal. See 9 A.L.R.3d 1275.

8

The trial court promptly and thoroughly investigated the alleged misconduct prior to the submission of the case to the jury. No prejudice to the defendant was disclosed and the appearance of impropriety was not a sufficient basis for reversal.

The order denying motion for mistrial is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9