No. 86-335

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ROSANNE MARIE MURRAY,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morrison, Hauge, Ober, Young & Melcher; Robert
        Morrison argued, Havre, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Marc Racicot argued, Asst. Atty. General, Helena
        Donald A. Ranstrom, Blaine County Attorney, Chinook,
        Montana

---

Submitted: May 1, 1987

Decided: August 18, 1987

Filed: AUG 18 1987

*Ethel M. Harrison*

---
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Roseanne Murray appeals her Blaine County District Court conviction for deliberate homicide. She raises three issues on appeal; (1) whether the District Court erred in refusing to declare a mistrial because of juror misconduct; (2) whether the defendant received the effective assistance of counsel where the State allegedly failed to give timely notice of witnesses; and (3) whether the court erred in allowing evidence of the defendant's prior disciplinary acts toward her foster daughter, the victim of the homicide. We affirm.

In September 1985, the defendant and her husband had five children living with them in their home near Chinook, Montana. T.H., the victim, was a 29 month old foster daughter of the Murrays. L.F. and F.F., who were then approximately nine and eight years old respectively, were also foster daughters and were half sisters of T.H. A., an adopted daughter, was then three years old and J., almost six months old at that time, had recently been placed for adoption with the Murrays.

On September 26, 1985, the defendant called Dr. James Beggs in Chinook at approximately 3:05 p.m. and reported that T.H. had stopped breathing. Dr. Beggs and an ambulance crew went to the Murray house to assist the child. The ambulance transported T.H. to the Northern Montana Hospital in Havre. She died later that evening. The county coroner listed the cause of death as internal injuries with associated bleeding, infection and shock. The autopsy of T.H. showed multiple bruises, abrasions and internal injuries. For purposes of this appeal, we need not recite the horrible specifics of the injuries nor all of the circumstantial evidence pointing to

the defendant as the perpetrator. Police arrested the defendant and the State charged her with deliberate homicide.

The Blaine County District Court scheduled defendant's trial for April 7, 1986. On March 28, 1986, ten days prior to trial, the State gave notice of its intent to possibly call twelve additional witnesses. The defendant moved to continue the trial date or, in the alternative, to deny the prosecution the right to call the additional witnesses. Ultimately, the defense appeared to acquiesce in the court's decision not to continue the trial and to allow the State to call some of the additional witnesses.

On April 2, 1986, the State filed notice of its intent to introduce evidence of prior acts of violence or discipline toward T.H. At the omnibus hearing in January 1986, the State had indicated it would not rely on evidence of past acts. In response to the April notice, the defense moved (1) to quash the State's notice of intent to introduce evidence; (2) in limine, to prevent the State from introducing evidence of the defendant's prior acts; and (3) for more specific information on the date, conduct and relevance of defendant's prior acts. The court ruled against the defense on all three aspects of its motion and allowed the State to introduce evidence of the defendant's prior disciplinary acts.

The case went to trial on April 7, 1986. Evidence at trial revealed that (1) F.F., L.F. and T.H. may have been abused, sexually and otherwise, prior to living with the Murrays; (2) that the two older children acted in violent and sexually inappropriate ways toward the younger children; and (3) that F.F. was especially violent towards T.H. Defendant's testimony implied that T.H. may have been fatally injured by her nine year old half sister, F.F. Eventually, the jury convicted the defendant of deliberate homicide. The

3

court sentenced defendant to fifty years in prison and designated her a nondangerous offender for parole purposes. This appeal followed.

The first issue is whether the court erred in refusing to declare a mistrial because of juror misconduct. Defendant complains about the alleged misconduct of two jurors. After the trial had commenced, juror Schaeffer was seen entering the local office of the state Social and Rehabilitative Services (SRS). At that point, evidence had already shown that SRS was involved peripherally in the case. The judge admonished the jury as a whole to avoid SRS personnel and the SRS office. Later, the defense produced evidence that Schaeffer, during the course of a conversation with his wife, mentioned the names of the Murrays and of some of the children while he was in a restaurant. Schaeffer denied that he discussed the case in public with anyone.

The most serious misconduct was that of juror McCoy. While the trial was in progress and after there had been evidence of sexual abuse of the children, juror McCoy made several phone calls attempting to contact Mr. Ranstrom, the Blaine County Attorney who assisted with the prosecution of defendant. Juror McCoy refused to identify herself and Ranstrom initially refused to talk with her for that reason. On her third call to Ranstrom's office, McCoy left an anonymous message quoting a newspaper article that "[e]ven criminal court cases involving sexual abuse charges are closed to the public. . . " Still without knowing McCoy's identity, Ranstrom returned her call to explain that the evidence of sexual abuse was properly admissible in a public trial in this instance. McCoy replied that she still didn't like it (apparently referring to the evidence of sexual abuse). Ranstrom stated that he didn't like it and that the victims and "perpetrators" probably didn't like it either.

Ranstrom later ascertained that the caller was juror McCoy and he informed the court and defense counsel of what had transpired. The article to which juror McCoy referred had appeared some months before in the Chinook, Montana, newspaper. The article talked of the sexual abuse of children in general terms and quoted several people, including one of the prosecutors of this case, on the problems of sexual abuse cases. The article made no mention of the instant case.

McCoy's actions violated the instructions given by the court at the start of the trial. The court had instructed, among other things, that the jurors should not talk about this case with anyone; that the jurors could not talk with any of the witnesses or attorneys involved in the case; that the jurors must not consult any books, encyclopedias or any other source of information, unless the judge authorized them to do so, and that the jurors should not read about the case in the newspapers.

The defense moved for a mistrial, complaining mainly about juror McCoy but also about juror Schaeffer. The court denied the motion.

> The ruling of the District Court on a motion for mistrial is not to be lightly disturbed. As we stated in Schmoyer v. Bourdeau (1966), 148 Mont. 340, 420 P.2d 316:
>
> "We hold that once the District Court has considered the matter, however it is raised, whether on a question for mistrial or motion for a new trial this court will not lightly disturb that ruling. To overthrow it this court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court's ruling. 148 Mont. at 343, 420 P.2d at 317-18.

State v. Counts (Mont. 1984), 679 P.2d 1245, 1248, 41 St.Rep. 681, 686.

In Counts, the defendant moved for a mistrial because of the possibility of juror misconduct. We stated,

> In this state, if jury misconduct is shown tending to injure the defendant, prejudice to defendant is presumed. However, this presumption is not absolute and may be rebutted by testimony of the juror showing facts which prove that prejudice or injury did not occur. (Citation omitted.)

Counts, 679 P.2d at 1248.

Here, juror McCoy testified (1) that she called prosecutor Ranstrom to ask why the evidence of sexual abuse was not heard in closed hearings; (2) that she found the newspaper article accidentally; (3) that, prior to the close of evidence, she had not formed or expressed any opinion as to the guilt or innocence of the defendant; (4) that she was not prejudiced either for or against the defendant; and (5) that she could be a fair and impartial juror. Juror Schaefer testified that he did not discuss the case in public at a restaurant and that he had not formed an opinion as to guilt or innocence prior to jury deliberations. Prosecutor Ranstrom also testified that the phone conversation with juror McCoy was basically limited to the propriety of allowing sexual abuse evidence in hearings open to the public. Lastly, we note that the newspaper article was general in nature and made no mention of the instant case.

Arguably, the jury misconduct tends to injure the defendant and, therefore, prejudice should be presumed. However, we find that the District Court could properly conclude that there was sufficient evidence to rebut any presumption. We affirm the denial of the motion for mistrial

6

because there is not clear and convincing evidence of the error of the court's ruling.

The second issue is whether the defendant received the effective assistance of counsel where the State allegedly failed to give timely notice of witnesses. Appellant relies on State v. Sotelo (Mont. 1984), 679 P.2d 779, 782, 41 St.Rep. 568, 571, wherein this Court stated that where counsel "has not been afforded sufficient time to prepare a defense, the accused's specific rights have been violated and his general right to a fair trial has been denied."

Ten days before trial, the State gave notice of its intent to possibly call twelve additional witnesses. After the defendant's objection, the State agreed not to call five of those witnesses and pointed out that the defense had already endorsed two of those witnesses. The court held a conference call on the addition of witnesses and, at that time, defense counsel stated, "I would say that my complaint is primarily to [L.F.]." The State suggested that, "If L.F. was withdrawn then and only used in possible rebuttal, then you wouldn't have a problem. Am I incorrect?" The defense counsel replied, "I would say that if she is withdrawn that we probably could do it, yes . . ." Thereafter, the prosecutor filed a letter stating that the prosecution would not call L.F. as a witness and, therefore, the trial would go on as scheduled. The above-cited transcript of the conference call demonstrates that the defense appeared to acquiesce in the decision not to continue the trial date. The defense complains now of the prejudice resulting from the late addition of witness Cortese.

In State v. Liddell (Mont. 1984), 685 P.2d 918, 924, 41 St.Rep. 1293, 1299, this Court stated, "[i]t is discretionary with the District Court to allow additional witnesses . . . " In Liddell, the lower court allowed the prosecution to

7

endorse an additional witness on the day of trial. The defense did not ask the court for a continuance and had interviewed the witness prior to trial. We found no error in adding the new witness.

Here, the State listed the new witnesses ten days before trial. Moreover, the defense appeared to acquiesce in the decision not to continue the trial. Therefore, we find that the court did not abuse its discretion in allowing the new witnesses.

The last issue is whether the court erred in allowing the State to introduce evidence of defendant's prior disciplinary acts toward the victim. The State introduced evidence that, on dates prior to T.H.'s death, the defendant (1) picked T.H. up by one arm and one leg while the child was sleeping and moved her a short distance; (2) disciplined T.H. by slapping her fingers and telling her not to cry; (3) tied T.H.'s hands to the bed at night so the child would not scratch her genitals; (4) made T.H. wear a dirty diaper all evening; (5) kicked T.H. to wake her up and kicked her butt up the stairs; (6) would not allow other people to pick up or hold T.H., saying the child had been previously abused; and (7) caused T.H. to drink vinegar from a bottle to break her habit of using an infant's bottle.

Rule 404(b), M.R.Evid., provides:

> Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In State v. Just (1979), 184 Mont. 262, 602 P.2d 957, this Court set forth substantive and procedural guidelines for

8

application of the Rule 404(b), M.R.Evid., exception. The procedural guidelines are that:

> "(a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in section 46-18-503, MCA should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.
>
> "(b) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.
>
> "(c) In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment."

State v. Brown (Mont. 1984), 680 P.2d 582, 584, 41 St.Rep. 852, 854-855, quoting Just, 602 P.2d at 274. In Just, this Court also established a four element test for the admissibility of evidence of other crimes or acts in criminal prosecutions. Those elements are (1) similarity of crimes or acts; (2) nearness in time; (3) tendency to establish a common scheme or system; and (4) the probative value of the evidence must not be substantially outweighed by the prejudice to the defendant.

Defendant first argues that the State's "notice of intent to introduce evidence" of prior acts was not timely made. We disagree. The State served notice to the defendant

9

on April 1, 1986, six days prior to the April 7 trial date. Shortly after the Just decision, this Court decided State v. Case (Mont. 1980), 621 P.2d 1066, 37 St.Rep. 2056, wherein we elaborated on the procedural guidelines for the introduction of prior crimes or acts evidence. We stated,

> First, the State must provide written notice to the defendant, before the case is called for trial, that the evidence is to be produced. (Emphasis added.)

Case, 621 P.2d at 1071. We find that the State's notice was timely.

The defense also complains that the State's notice did not describe with sufficient specificity the prior acts of defendant. The notice describes evidence of prior acts as revealed by the statements of the defendant and six other witnesses, "copies of which have previously been provided to defense counsel." The defense acknowledged receiving the six witnesses' statements well before trial and that they had interviewed each of those witnesses. We find that the defense was apprised with sufficient specificity of the evidence to be introduced.

The final issue is whether the prior acts evidence was admissible under the four part test enunciated in Just. The court found that all four parts of the Just test were satisfied. Initially, we note that

> [w]hile failure of questioned evidence to meet only one element of the Just test is not sufficient to refuse its admission, a decision to admit the evidence should not be made lightly. The four factors must be considered together.

State v. T.W. (Mont. 1986), 715 P.2d 428, 430, 43 St.Rep. 368, 371. The first element is the similarity of the prior acts to the crime charged. We fail to see how certain of the prior acts cited above (such as causing T.H. to drink vinegar

10

from a bottle and making her wear a dirty diaper for one evening) can be considered similar to the violence which resulted in the child's death. Other acts arguably display a harsh disciplinary attitude which foreshadows, and is minimally similar to, the fatal violence. We find that the similarity requirement is not clearly met in this case.

The second guideline, nearness in time, is clearly met in this case. All of the events occurred within one year of T.H.'s death.

Under the third Just guideline, we find that the disputed evidence does tend to establish a common scheme, plan, or system, i.e., a system of unusually harsh discipline of the child. In State v. Powers (Mont. 1982), 645 P.2d 1357, 39 St.Rep. 989, four members of a church sect were convicted of deliberate homicide in the death, by disciplinary beatings, of the son of two of the defendants. The trial court allowed evidence of prior acts of violence against the victim and other children committed by members of the church other than the defendants. We ruled that the evidence was properly admissible, stating,

> Evidence of the acts by church members other than defendants, and acts by the defendants against children other than the victim, show the common design toward disciplining children by beatings arising out of the church policy. It ties these defendants to that policy by showing the similarity of methods and discipline practiced by church leaders and these defendants.
>
> . . .
>
> The evidence at issue here provides proof of these defendants' motive for inflicting the punishment on the victim and the plan and intent behind the treatment of him.

11

Powers, 645 P.2d at 1363. Here, the evidence of prior acts arguably showed the defendant's motive (discipline) in inflicting the injuries which resulted in T.H.'s death and showed a system of excessively harsh discipline.

We also find that the fourth Just element is met here. In the unique circumstances of this case, where the prosecution had to rely heavily on circumstantial and indirect evidence because of the nature of the crime, the probative value of the disputed evidence was not substantially outweighed by the prejudice to the defendant. Given that the last three elements of the Just formula are present, we hold that the disputed evidence was properly admissible.

We further hold that the disputed evidence was also admissible under State v. Sigler (Mont. 1984), 688 P.2d 749, 41 St.Rep. 1039, independent of Rule 404(b) and the Just formula. Sigler was convicted of beating a nineteen month old child to death. In Sigler, we condoned the introduction of evidence of Sigler's previous violent disciplinary acts, including "hard spankings," cigarette burns, slapping and kicking the child. We held that the evidence was admissible under Just and upon other, independent grounds. We stated:

> Evidence of other crimes, wrongs or acts is an exception to the general rule that evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Rule 404 M.R.Evid. A trait of character is to be distinguished from habit. "A habit is a person's regular response to a repeated specific situation." Rule 406, M.R.Evid. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

12

> "Character may be thought of as the sum of one's habits though doubtless it is more than this. But unquestionably the uniformity of one's response to habit is far greater than the consistency with which one's conduct conforms to character or disposition. Even though character comes in only exceptionally as evidence of an act, surely any sensible man in investigating whether X did a particular act would be greatly helped in his inquiry by evidence as to whether he was in the habit of doing it." McCormick on Evidence § 162, at 341.
>
> Under Rule 406, M.R.Evid., the acts habitually performed by Sigler in response to his perceived need for discipline of the child were admissible. As a matter of habit, his discipline of the child was excessively harsh. (Emphasis added.)

Sigler, 688 P.2d at 752-753. The disputed evidence here was also admissible under Rule 406, M.R.Evid., as tending to show the defendant's <u>habitually</u> excessive discipline of the child.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
John C. Sheehy
_____
William E. Hunter
Justices

_____
Joseph B. Gary
The Honorable Joseph B. Gary,
Judge of the District Court,
sitting in place of former
Justice Frank B. Morrison, Jr.