No. 88-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

WALTER HARRY DeGRAW,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jeffrey T. Renz, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Kathy Seeley, Asst. Atty. General, Helena
        C. Ed Laws, County Attorney, Columbus, Montana

_____

Submitted on Briefs: Sept. 15, 1988

Decided: December 2, 1988

Filed:

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Walter Harry DeGraw, the defendant, appeals the decision of the District Court of the Thirteenth Judicial District, Stillwater County, denying defendant's motion for a new trial or, in the alternative, a mistrial due to jury misconduct. We affirm in part, reverse in part, and remand for a new trial.

DeGraw raises the following two issues on appeal:

(1)    Whether the District Court erred in refusing to grant a new trial or declare a mistrial when, during the trial, the jury foreman learned of defendant's alleged criminal record.

(2)    Whether the District Court erred in refusing to give defendant's proposed instruction no. 4, instructing that if two conclusions can be reasonably drawn from the testimony, one favoring the defendant's innocence and the other tending to establish his guilt, the jury should adopt the conclusion of innocence.

On December 8, 1986, DeGraw, the defendant, was charged by information under § 45-5-202, MCA, with two counts of felony assault. DeGraw's case proceeded to trial before a jury on Count I on July 27, 1987. The State dismissed Count II for lack of evidence. The jury returned a verdict on July 29, 1987, finding DeGraw guilty of felony assault.

Approximately a week after the verdict, Pierce, a juror who served on DeGraw's jury, contacted defense counsel and stated that Young, the foreman for the DeGraw jury, informed the jurors during deliberations that he had reliable information from the sheriff's department. Upon learning of possible jury misconduct, DeGraw moved for a new trial. The

District Court held an evidentiary hearing on the motion on December 15, 1987.

Foreman Young testified at the hearing that on the day before the jury deliberated, he had been a third party to a conversation in which a cook at a restaurant stated that DeGraw "had a criminal record as long as your arm." Young also testified that during the deliberations the jurors "were conversing about the credibility of Mr. DeGraw, and I said I had heard some things about Mr. DeGraw . . . ." Juror Pierce testified that foreman Young told the jurors before they started deliberations and before the vote was taken that "he had reliable information from the sheriff's department . . . about Mr. DeGraw [and] did we want to hear it . . . ." The jury declined to hear the offered information.

The District Court denied DeGraw's motion for a mistrial or, in the alternative, a new trial, and subsequently sentenced DeGraw to seven years imprisonment for the offense of felony assault and two years for the use of a firearm during the commission of the offense. The District Court suspended seven years of the sentence. DeGraw appealed.

The first issue raised on appeal is whether the District Court erred in refusing to grant a new trial or declare a mistrial when, during the trial, the jury foreman learned of DeGraw's alleged criminal record.

A defendant's right to a fair and impartial jury is guaranteed by both our state and federal constitutions. 1972 Mont. Const. Art. II, § 24; U.S. Const. Amend. VI. Consequently, jury misconduct tending to injure the defendant creates a presumption of prejudice to the defendant. The presumption, however, is not absolute and may be rebutted by evidence showing that prejudice or injury did not occur. State v. Murray (Mont. 1987), 741 P.2d 759, 762, 44 St.Rep.

1394, 1397; State v. Eagan (1978), 178 Mont. 67, 79, 582 P.2d 1195, 1202.

Upon reviewing whether a district court erroneously denied a defendant's motion for a new trial based on jury misconduct, a district court's ruling is given considerable weight. Eagan, 178 Mont. at 76, 582 P.2d at 1200. This Court, however, is in as good a position as a district court to make this determination when no factual disputes exist as to a juror's conduct. Eagan, 178 Mont. at 76, 582 P.2d at 1200 (citing People v. Brown (1976), 61 Cal.App.3d 476, 132 Cal.Rptr. 217, 220-21). In this case, no dispute exists as to Young's conduct. He admitted that he was a third party to a conversation in which a person stated that DeGraw "had a criminal record as long as your arm." He also admitted that, before the deliberations began, he informed the jurors that he had heard some things about DeGraw. This Court may therefore conduct an independent review after examining the whole record. Eagan, 178 Mont. at 76, 582 P.2d at 1200.

We hold that, under the present set of facts, defense counsel established a presumption of prejudice to DeGraw and the State failed to rebut this presumption. The evidence is uncontroverted that foreman Young was dining at his sister's restaurant the evening before the jury delivered its verdict and that he was a third party to a conversation at the restaurant in which someone stated that DeGraw "had a criminal record as long as your arm." The record is also uncontroverted that Young was affected enough by the conversation that the following day prior to the deliberations when the jurors were discussing DeGraw's credibility, Young informed the jurors that he had reliable information from the sheriff's department and asked whether they wanted to hear it. Although the jurors declined to hear the offered information, the injury to DeGraw had already

occurred when Young heard the prejudicial comments from a third party and then when he informed the remaining eleven jurors that he had reliable information from the sheriff's department. Undoubtedly, most people are likely to assume that information from the sheriff's department is not favorable when pertaining to a person who is being tried for felony assault.

Three jurors--Pierce, Myers and foreman Young--were questioned at a hearing to determine whether jury misconduct prejudiced DeGraw. The District Court found that Young considered the information "nothing more than 'small-town gossip,'" and that Young did not allow the information to affect his decision. The District Court then noted that the other jurors did not allow Young to share the information and that Young could not have 'contaminated' the rest of the jury by merely mentioning that he had heard something. The District Court, citing Putro v. Baker (1966), 147 Mont. 139, 147, 410 P.2d 717, 721-22, recognized that a juror cannot purge himself merely by declaring that extraneous information did not affect his judgment, but then concluded that "the testimony of these jurors shows that prejudice or injury did not occur." We disagree.

We stated the applicable law first in 1890 in State v. Jackson (1890), 9 Mont. 508, 24 P. 213, where we held that the State may remove the presumption of prejudice by using the

> testimony of the jurors to show facts which prove that prejudice or injury did not or could not occur. For example, if a juror is temporarily separated from his fellows . . . he may show that during such separation he saw or talked to no one, and that no influences were brought to bear upon him of any character. This court, however, has never held, and does not now hold, that, if the contact of the juror with outside, prejudicial

> influences be clearly demonstrated and
> uncontroverted, the juror may purge himself by
> testifying that such influences did not affect his
> judgment in forming his verdict.

Jackson, 9 Mont. at 522, 24 P. at 216-17. In a more recent decision, Eagan, a disqualified juror may have made his prejudice known to other jury members. The District Court relied completely on the responses from the challenged juror that he had not discussed the case with the other jurors. We noted that improper conduct is imputed to the entire jury panel when one juror is found guilty of improper conduct. Eagan, 178 Mont. at 78, 582 P.2d at 1201 (citing Kinkaid v. Wade (1966), 196 Kan. 174, 410 P.2d 333, 337). We then held that "[w]e cannot assume . . . that the remainder of the jury panel had been safeguarded from contamination in the absence of some interrogation addressed to those jurors to dispel the possibility that prejudice existed . . . ." Eagan, 178 Mont. at 78, 582 P.2d at 1201.

In the present case, the District Court relied completely on the responses of the three jurors who testified at a subsequent hearing concerning jury conduct. The remaining nine jurors were never polled. The record does not contain any other evidence that would establish that prejudice to DeGraw did not arise. We cannot assume that the entire jury panel was safeguarded from contamination. The presumption of prejudice that is created when uncontroverted evidence establishes that prejudicial statements concerning a defendant reached one or more jurors, is not rebutted when, as in this case, no evidence existed to rebut the presumption other than the testimony of three of the twelve contaminated jurors.

The District Court also stated that "[f]acts more prejudicial on their face than the facts in the case at bar

have not warranted a mistrial in other cases." In light of the three cases the District Court cited, which we review below, we disagree. In State v. Counts (1984), 209 Mont. 242, 679 P.2d 1245, a juror and a key witness for the prosecution, who were acquaintances, had lunch together during the trial. The acquaintanceship between the juror and the witness had been disclosed during voir dire. The District Court and the defense counsel questioned both the witness and the juror because of the appearance of improper conduct, but unlike the present case with DeGraw, failed to find any indication that the luncheon conversation concerned the trial or the defendant in anyway. Counts, 209 Mont. at 244-46, 679 P.2d at 1246-47. The record contained no evidence to dispute the District Court's finding and we therefore held that no prejudice to the defendant occurred and the appearance of impropriety was not a sufficient basis for reversal. Counts, 209 Mont. at 249-50, 679 P.2d at 1249.

In State v. Gillham (1983), 206 Mont. 169, 670 P.2d 544, the defendant was convicted of attempted deliberate homicide. After the verdict was announced, defense counsel polled the jurors regarding their exposure to media coverage of the trial. One juror admitted to reading a newspaper article before the defendant presented his case. The article summarized the State's case. The juror testified that it was an accurate and factual report and "about the same" as the admissible testimony already before the jury. Gillham, 206 Mont. at 180-81, 670 P.2d at 550-51. But again, unlike the present case, no evidence was before the court demonstrating that the information was prejudicial or other than what was already before the jury. We agreed that juror misconduct occurred but adopted the reasoning of the Oklahoma court which stated that "the burden of persuasion is on the defendant to show by clear and convincing evidence that (1)

- 7 -

the jurors were specifically exposed to media reports which (2) were prejudicial to the defendant. Mere proof that a juror or jury was exposed to factual account of the trial will not meet this burden of persuasion." Gillham, 206 Mont. at 181, 670 P.2d at 551 (quoting Tomlinson v. State (Okla. Cr.App.1976), 554 P.2d 798, 804). We then held that the defendant failed to meet his burden of establishing the prejudicial nature of the questioned media information. Gillham, 206 Mont. at 181, 670 P.2d at 551.

In State v. Murray (Mont. 1987), 741 P.2d 759, 44 St. Rep. 1394, two jurors' conducts were questioned. After the trial had begun, juror Schaeffer was seen entering the local office of the state Social and Rehabilitative Services (SRS) after evidence had already been shown that SRS was peripherally involved in the case. Evidence was also presented that Schaeffer had, during the course of a conversation with his wife at a restaurant, mentioned the names of the defendant and his children. Juror Schaeffer then testified that he did not discuss the case in public at a restaurant and that he had not formed an opinion as to the defendant's guilt or innocence prior to jury deliberations. Murray, 741 P.2d at 761-62, 44 St.Rep. at 1396-97.

Juror McCoy's conduct was also questioned in Murray. During the course of the trial and after evidence of sexual abuse to the children had been presented, juror McCoy made several anonymous phone calls to a county attorney who assisted with the prosecution of the defendant. Without knowing the identity of the caller, the county attorney finally spoke with the caller and listened to her concern that criminal cases involving sexual abuse charges should be closed to the public. The county attorney explained to the caller that sexual abuse evidence was properly admissible in a public trial in the present case. The county attorney

- 8 -

later discerned the identity of the caller and informed the trial judge and the defense counsel. Murray, 741 P.2d at 761-62, 44 St.Rep. at 1396-97.

Juror McCoy testified at a subsequent hearing that she did not form an opinion as to the defendant's guilt or innocence prior to deliberations, that she held no prejudice against the defendant, and that she could be a fair and impartial juror. The county attorney testified that the phone conversation with juror McCoy was basically limited to the propriety of allowing sexual abuse evidence in hearings open to the public. Murray, 741 P.2d at 761-62, 44 St.Rep. at 1396-97.

Unlike the present situation with DeGraw, no prejudicial statements were made by either juror Schaeffer or juror McCoy. We held, however, that the defendant established a presumption of prejudice as a result of juror Schaeffer's and juror McCoy's conducts, but that the District Court properly concluded that sufficient evidence existed to rebut the presumption. Murray, 741 P.2d at 762, 44 St.Rep. at 1397.

The District Court, in the present case, cited the above three cases as having facts more "prejudicial on their face than the facts in the case at bar . . . ." We disagree. In the present case, the evidence is uncontroverted that foreman Young was a third party to a conversation in which someone stated that DeGraw "had a criminal record as long as your arm." The evidence also establishes that while the jurors were discussing DeGraw's credibility, foreman Young mentioned that he had some reliable information from the sheriff's office. In the above three cases, the jury misconduct presented in each case does not equal the amount of injury cast upon DeGraw by the prejudicial statements made to foreman Young and by him to the remaining eleven jurors during the deliberations. We therefore hold that the State

failed to rebut the presumption of prejudice established by DeGraw and reverse the District Court on this issue and remand for a new trial.

The second issue raised on appeal is whether the District Court erred in refusing to give defendant's proposed instruction no. 4. This instruction reads:

> You are instructed that if the testimony in this case, in its weight and effect, be such that two conclusions can be reasonably drawn from it, one favoring the defendant's innocence and the other tending to establish his guilt, the jury should adopt the conclusion of innocence.

The State objected to the instruction arguing that the instruction is confusing and that it is covered by the instruction that includes the presumption of innocence. The District Court refused this instruction stating that it was not an entirely correct statement of the law.

Included in the instructions the District Court gave to the jury were the following:

Instruction No. 2

. . .

> In determining what the facts are in the case, it may be necessary for you to determine what weight should be given to the testimony of each witness. To do this you should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. . . .

Instruction No. 7

. . .

> 3. The State of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt.

- 10 -

4. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would rely and act upon it in the most important of his own affairs. Beyond a reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt.

5. The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty. The defendant is not required to prove his innocence.

## Instruction No. 9

To convict the defendant of FELONY ASSAULT, the State must prove the following element:

That the defendant purposely or knowingly caused reasonable apprehension of serious bodily injury to STEVE KETCHUM or another person by use of a weapon.

If you find from your consideration of all the evidence that this element has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that this element has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Refusing an instruction, adequately covered by other instructions, is not reversible error. Wheeler v. City of Bozeman (Mont. 1988), 757 P.2d 345, 347, 45 St.Rep. 1173, 1176; Burns v. U & R Express (Mont. 1981), 624 P.2d 487, 489, 38 St.Rep. 302, 304-05. In the present case, the instructions as a whole adequately informed the jury on the standards addressing the presumption of innocence and reasonable doubt and also gave the jurors guidance in weighing the witnesses' testimonies. Instruction no. 4 did

- 11 -

not add to the court approved instructions. The District Court therefore did not err in refusing instruction no. 4.

Affirmed in part, reversed in part, and remanded for a new trial.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices