

DA 09-0558

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 186

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

FRANK JOACHIM KNOWLES,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2008-197
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Chad M. Wright, Hooks & Wright, P.C., Helena, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Leo Gallagher, Lewis and Clark County Attorney, Tara A. Harris, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  June 30, 2010

Decided:  August 24, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Frank Joachim Knowles (Knowles) appeals his conviction for felony assault with a weapon in the First Judicial District Court. We reverse Knowles' conviction and remand this matter for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In September 2004, Knowles and his wife Cindy adopted a boy now named C.F. In September 2006, they adopted another boy, B.K. B.K. is currently fifteen and C.F. is eleven.

¶3 In April 2008, Frank, Cindy and the boys were residing in Lincoln, Montana. On April 29, 2008, C.F. showed up at school with injuries to his face. At the time, Knowles was out of town in Pennsylvania on a business trip. The school principal, Jilyn Oliveria (Jilyn), reported the abuse and took photographs of C.F.'s face. Department of Public Health and Human Services (DPHHS) social worker Jim Abrahamson (Abrahamson) drove to Lincoln in order to interview C.F. By the time Abrahamson arrived at the school, class had been dismissed for the day and the boys had gone home. Based on the photographs taken by Jilyn, Abrahamson thought that C.F. had been slapped on the left side of his face hard enough to leave a handprint. Abrahamson went to the boys' home to talk with C.F. and investigate the matter.

¶4 Abrahamson subsequently observed the injuries to C.F.'s face. C.F. told Abrahamson that Cindy had slapped him several times on the face because he was talking with food in his mouth. C.F. stated that he fell on the floor, and Cindy got on top of him and continued to slap him. After interviewing C.F., Abrahamson concluded it was

2

necessary to remove both C.F. and B.K. from Cindy's care. At the time, B.K. did not report any injuries to Abrahamson and did not have any noticeable physical injuries. Abrahamson placed the children with Jilyn, since there were no other readily-available placements in Lincoln. On April 30, Abrahamson spoke with Knowles by telephone to let him know that he had removed the boys from Cindy's care and why he had done so.

¶5 Later that same day, Abrahamson took the boys to be examined by Dr. Thomas Strizich (Dr. Strizich), a Helena pediatrician. B.K. was twelve years old at the time and of below average height and weight. Dr. Strizich examined B.K. and discovered a series of bruises on the back of his right thigh and hip area. The area of bruising measured approximately fifteen centimeters. Dr. Strizich photographed the injuries.

¶6 B.K. subsequently told Dr. Strizich and Abrahamson that Knowles struck him with a belt about fifteen to twenty times around the time that Knowles left on his business trip. As he later testified, Dr. Strizich believed that the bruising he observed was consistent with being struck with a belt. After the medical appointment, Abrahamson contacted Knowles by telephone and asked him whether there had been an incident between him and B.K. before he left on his trip. In recounting their conversation at trial, Abrahamson told the jury that Knowles did not tell him of any incidents. Abrahamson told Knowles about the bruising on the back of B.K.'s thigh. When Knowles returned from his business trip several days later, he met with Abrahamson again. During this conversation, Abrahamson claimed that Knowles admitted to spanking B.K. with a belt prior to leaving on his business trip.

3

¶7     Knowles and Cindy were subsequently charged with assault on a minor, in violation of § 45-5-212, MCA. Their trials were separated. Prior to trial, the State filed written notice of its intent to introduce against Knowles evidence of prior bad acts pursuant to the criteria of the Modified *Just* Rule as set forth in *State v. Matt*, 249 Mont. 136, 814 P.2d 52 (1991). These criteria are as follows:

> (1) The other crimes, wrongs or acts must be similar.
> (2) The other crimes, wrongs or acts must not be remote in time.
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*State v. Aakre*, 2002 MT 101, ¶ 9, 309 Mont. 403, 46 P.3d 648.

¶8     Specifically, the State sought to introduce evidence of Knowles' participation in hitting his children with a belt, not allowing his children to leave their room, slapping the children, and other acts against the boys. The State also sought to introduce evidence that Cindy had been charged with assault of a minor, as well as evidence of C.F.'s injuries. The District Court allowed the State to present this evidence at trial. Cindy was convicted on November 18, 2008, and received a three-year sentence with the Department of Corrections. Knowles' trial was held on December 2, 2008. The jury was unable to reach a verdict, and the District Court declared a mistrial.

¶9     After the mistrial, the State offered Knowles an open plea offer for the assault on a minor charge. The State informed Knowles that if he did not accept this deal, it would

amend the charge to felony assault with a weapon. Felony assault with a weapon in violation of § 45-5-213(1)(a), MCA, carries a maximum term of imprisonment of twenty years, while felony assault on a minor carries a maximum term of only five years. Knowles rejected the plea deal and exercised his right to go to trial a second time.

¶10    An amended information was filed on December 22, 2008. As promised, the State charged Knowles with felony assault with a weapon. The State alleged that Knowles purposefully or knowingly caused bodily injury to B.K. with a weapon by hitting him multiple times with a belt in April 2008. In April 2009, the State again filed written notice of its intent to introduce evidence of prior bad acts. Knowles opposed the introduction of this evidence. He argued that because the assault with a weapon charge was limited to his use of a belt against B.K. (as opposed to the previous general assault charge), the bad act evidence previously admitted was no longer admissible. The District Court, relying on *State v. Murray*, 228 Mont. 125, 741 P.2d 759 (1987), held that while the first of the Modified *Just* Rule criteria (i.e., similarity of the prior acts) may not be clearly met in an excessive discipline case, the other three criteria were met so as to allow the admission of evidence of other acts of excessive discipline. Accordingly, the District Court ruled that it would allow other evidence of Knowles' actual physical or threatened abuse of B.K. and C.F.; however, it limited evidence of Cindy's conduct to the initial slapping of C.F. which led to the charges against Knowles.

¶11    Prior to trial, Knowles sought to compel discovery of the evaluation, counseling and written records of Abrahamson, and the files of a private evaluator, Wendy Bazinet, as well as the records maintained by the Child and Family Services Division (CFSD) of

5

DPPHS. Knowles argued that because the counseling and investigations were initiated by the State and were important in the previous trial, no claim of privilege to withhold those documents existed. Although Knowles had been given a typed summary report prepared by Abrahamson, he argued that this was insufficient to aid in his defense. The District Court denied the motion after an in camera review of the CFSD material. The District Court found that none of the documents in the CFSD file were relevant to the charges and that there were no "smoking guns" which would provide any additional insight into the case or would otherwise be discoverable under § 41-3-204(2), MCA.

¶12 A jury trial was held from June 15-17, 2009. B.K., C.F., Abrahamson, Knowles, Dr. Strizich, Jilyn, defense expert Dr. Thomas Bennett, and others testified at trial. During Jilyn's testimony, the District Court admitted a photograph of C.F.'s facial injuries over Knowles' objection. The District Court gave a cautionary instruction regarding the limited purposes of other bad act evidence at that time. Jilyn testified about Cindy's conduct towards the boys, the injuries she had witnessed on C.F., and that Cindy had attempted to intimidate the boys when they were giving statements to Abrahamson. B.K. and C.F. both testified about the punishments Knowles would administer to them. B.K. testified that Knowles would have him lie face down on a bed with his pants pulled down, and that Knowles would strike him with a belt on the bare skin as a form of punishment. B.K. testified that he would receive multiple hits with the belt. B.K. testified that Knowles caused the bruising to his thigh area when he hit him with a belt prior to leaving on his business trip. However, B.K. also testified that Knowles would

6

fold the belt in half when administering this punishment, and never hit him with a belt buckle.

¶13 Abrahamson testified about his investigation and the telephone conversation he had with Knowles on April 30. Abrahamson told the jury that Knowles denied there had been any incident between him and B.K. before he left on his business trip, and that Knowles did not acknowledge disciplining B.K. with a belt until he spoke with Abrahamson after returning from his trip. Knowles cross-examined Abrahamson about this conversation, and unsuccessfully attempted to question Abrahamson about prior statements on this topic which he had made in the previous trial. Additionally, Knowles sought to question Abrahamson about whether he took any notes during their phone conversation, since there were no notes of the April 30 conversation in Abrahamson's summary report. Abrahamson indicated that notes could possibly be in the CFSD investigative file, but no notes had been produced at the time of trial.

¶14 At the close of the State's case-in-chief, Knowles moved to preserve the records from the CFSD investigative file so that Abrahamson's notes from the April 30 conversation could be retrieved. The District Court advised Knowles that it had already returned the file, but granted Knowles' request to retrieve any notes. Knowles also moved to dismiss the assault with a weapon charge on the basis of vindictive prosecution, arguing that no additional evidence about the extent of B.K.'s injuries had been presented by the State in its case-in-chief in the second trial, and that the State had enhanced the charges against him from assault on a minor to assault with a weapon based solely upon

Knowles' exercise of his right to go to trial a second time. The District Court took the motion under advisement in order to give the State time to respond.

¶15 In his defense, Knowles called Dr. Bennett, a board-certified forensic pathologist, to testify about the bruising on B.K. Dr. Bennett testified that the buckles of the belts in evidence did not match the size of the distinctive marking which Dr. Strizich testified was caused by the belt buckle. Dr. Bennett opined that the bruises had not been caused by the belt, but instead appeared to be caused by multiple hits from a solid object at least three inches long. Knowles called his friend William Wellenstein to testify as well. Wellenstein testified that he saw B.K. and friends hitting each other with a jump rope on the playground at school around the time of the alleged assault. Knowles himself testified that he did not cause the bruising. He admitted using a belt to spank both C.F. and B.K., but claimed he never hit them with a belt buckle. The State cross-examined Knowles about his April 30 phone conversation with Abrahamson, and questioned why Knowles had not informed Abrahamson of disciplining B.K. prior to leaving on the trip. Knowles responded that he thought he had told Abrahamson about the incident, but was unsure how much detail he had given him.

¶16 The jury convicted Knowles of assault with a weapon. Post-trial, the court advised the parties that Knowles' motion to supplement the record with regard to Abrahamson's testimony about the April 30 telephone conversation was granted; however, CFSD later reported to the court that the investigative file did not contain any notes about this telephone conversation.

¶17    At the sentencing hearing, the District Court denied Knowles' motion to dismiss the charge based on vindictive prosecution. However, when the State recommended a sentence of twenty years in the Montana State Prison with five years suspended, the District Court expressed surprise at the length of the sentence, especially given the fact that the original charge of assault with a minor had carried a much shorter sentence. Upon query by the court, the State explained that prior to the first trial it had offered a plea deal on partner family member assault, with some jail time and a suspended sentence. When that proposal was rejected, the State went to trial on the assault on a minor charge against Knowles. The State then explained that after the mistrial, it offered an open plea agreement for assault on a minor, but informed Knowles it would amend to assault with a weapon if he did not accept the deal. Near the end of the hearing, the District Court commented that the recommended sentence was harsher than other sentences previously recommended by the State for more violent crimes. In response, the State explained that it felt Knowles was deserving of a harsher sentence because the case involved young children whose lives had been completely altered, and because Knowles had been engaged in a pattern of chronic abuse against the children. The District Court ultimately imposed a ten year sentence with all but six months suspended.

¶18    Knowles appeals his conviction. We state the issues on appeal as follows:

¶19    **Issue One:** *Did the District Court err in denying Knowles' motion to dismiss the assault with a weapon charge based on prosecutorial vindictiveness?*

¶20    **Issue Two:** *Did the District Court abuse its discretion when it admitted evidence of Cindy's abuse of C.F.?*

9

¶21 **Issue Three:** *Did the District Court impair Knowles' ability to present his defense and effectively cross-examine Abrahamson, by denying him access to the CFSD investigative file?*

## STANDARD OF REVIEW

¶22 We review a district court's evidentiary rulings on the relevancy and admissibility of evidence for an abuse of discretion. *Aakre*, ¶ 8. A district court's decision to admit evidence of other crimes, wrongs, or acts under the Modified *Just* Rule is reviewed under the abuse of discretion standard as well. *Aakre*, ¶ 8. An abuse of discretion occurs if the court acts arbitrarily without the employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *State v. Passmore*, 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229.

¶23 The denial of a motion to dismiss in a criminal case presents a question of law which we review de novo. *Passmore*, ¶ 39 (citing *State v. Giddings*, 2009 MT 61, ¶ 42, 349 Mont. 347, 208 P.3d 363). Findings of fact in support of such a decision are reviewed under the clearly erroneous standard. *Passmore*, ¶ 39.

## DISCUSSION

¶24 **Issue One:** *Did the District Court err in denying Knowles' motion to dismiss the assault with a weapon charge based on prosecutorial vindictiveness?*

¶25 Knowles argues that the assault with a weapon charge should have been dismissed based on prosecutorial vindictiveness. At the first trial, Knowles was charged with assault on a minor, which carries a maximum imprisonment of five years. After the mistrial, the State charged him with assault with a weapon, which carries a maximum

term of twenty years imprisonment. Knowles contends that the increased charge was levied solely because he exercised his right to go to trial a second time, rather than accept a plea deal.

¶26 Knowles argues that under *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098 (1974), and *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989), he may not be penalized with the imposition of a harsher sentence or increased charges merely for exercising his right to go to trial after the first mistrial. Citing *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978), he contends that vindictiveness will be presumed when the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness. Such a presumption of vindictiveness arises here, he argues, because the evidence presented in the second trial was not different or more serious than the evidence presented in the first trial. Lacking new evidence to justify the heightened charge, Knowles reasons that the only conclusion to be reached is that the State increased the charges because he refused to accept a plea bargain. He therefore urges us to reverse the District Court's refusal to dismiss on the basis of vindictiveness, and remand for reinstatement of the original charge of assault on a minor.

¶27 In response, the State notes that it notified Knowles after the mistrial in the first case that it would hold an open plea deal to assault with a minor, and that if he failed to take the deal it would amend to assault with a weapon. When Knowles failed to respond, the State filed the amended information. The State contends that under *State v. Smith*, 280 Mont. 158, 931 P.2d 1272 (1996) and *State v. Mahoney*, 264 Mont. 89, 870 P.2d 65

11

(1994), it could have charged Knowles with assault with a weapon at the first trial, and that its decision not to do so, as well as its decision to charge assault with a weapon during the second trial, were decisions made squarely within its prosecutorial discretion. *See Mahoney*, 264 Mont. at 96, 870 P.2d at 70 (quotation and emphasis omitted) ("When the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion."). Accordingly, the State argues that the decision to increase the charge was an act of prosecutorial discretion and not vindictiveness, and that Knowles' conviction should be affirmed.

¶28    In *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485 (1982), the United States Supreme Court stated the rule regarding "vindictive prosecution" as follows:

> To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363. In a series of cases beginning with *North Carolina* v. *Pearce* and culminating in *Bordenkircher* v. *Hayes*, the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.
>
> The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*Goodwin*, 457 U.S. at 372-73, 102 S. Ct. at 2488 (footnote omitted).

¶29    The *Goodwin* court noted that since even the "fear of vindictiveness" may unconstitutionally deter a defendant from exercising a right to appeal or otherwise attack his conviction, due process requires that a "defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge." *Goodwin*, 457 U.S. at 373-74, 102 S. Ct. at 2489 (quotation omitted).    In order to assure the absence of such vindictiveness, the court held that,

> "[Whenever] a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.  And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

*Goodwin*, 457 U.S. at 374, 102 S. Ct. at 2489 (quoting *Pearce*, 395 U.S. at 726, 89 S. Ct. at 2081) (alteration in original).

¶30    The Court then discussed the case of *Blackledge* as illustrative of this principle.  In that case a defendant in North Carolina was convicted of misdemeanor assault with a weapon and given a six-month sentence.  After his conviction, he appealed for a de novo trial in North Carolina's Superior Court.  The prosecutor then indicted him for felony assault with a deadly weapon with intent to kill. *Blackledge*, 417 U.S. at 23, 94 S. Ct. at 2100.  The United States Supreme Court held that it was not constitutionally permissible for the state to bring the increased charge against the defendant for exercising his statutory right to appeal his conviction for a de novo trial. *Blackledge*, 417 U.S. at 28-29, 94 S. Ct. at 2103.  The Supreme Court held that "[a] person convicted of an offense is

13

entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Blackledge*, 417 U.S. at 28, 94 S. Ct. at 2102-03. The *Blackledge* court stated as follows:

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

*Blackledge*, 417 U.S. at 27-28, 94 S. Ct. at 2102.

¶31    In summarizing the *Blackledge* case, the *Goodwin* court noted that "in *Blackledge* . . . it did not matter that no evidence was present that the prosecutor had acted in bad faith or with malice in seeking the felony indictment. As in *Pearce*, the Court held that the likelihood of vindictiveness justified a presumption that would free defendants of apprehension of such a retaliatory motivation on the part of the prosecutor." *Goodwin*, 457 U.S. at 376, 102 S. Ct. at 2490 (footnote omitted).

¶32    However, in the *Goodwin* case itself, the Supreme Court found no prosecutorial vindictiveness. *Goodwin* involved several misdemeanor charges which were increased to felony charges after Goodwin fled the court's jurisdiction for three years, and upon return, refused to plead to the misdemeanor charges. Goodwin was subsequently convicted on all felony counts. Goodwin moved to set aside his conviction on the

14

grounds of prosecutorial vindictiveness. *Goodwin*, 457 U.S. at 371, 102 S. Ct. at 2488. The motion was denied by the federal district court, but the Court of Appeals reversed Goodwin's conviction. The government appealed to the United States Supreme Court, which rejected Goodwin's arguments and reinstated his conviction.

¶33 In rejecting Goodwin's argument for prosecutorial vindictiveness, the court noted that the presumption of vindictive prosecution does not generally apply to pretrial plea negotiations between the State and the defendant. In the case of *Bordenkircher*, for instance, the court held that due process "did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged." *Goodwin*, 457 U.S. at 377, 102 S. Ct. at 2490-91 (discussing *Bordenkircher*). The court held that the "give and take" of negotiations in the pretrial context did not constitute an attempt to punish a defendant for exercising a constitutional right, so long as the defendant was free to accept or reject the offer made by the prosecution. *Bordenkircher*, 434 U.S. at 363, 98 S. Ct. at 668. As stated by the court in *Goodwin,*

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin*, 457 U.S. at 380, 102 S. Ct. at 2492 (discussing *Bordenkircher*).

¶34 Elaborating upon this discussion—and critical to our decision here—the *Goodwin* court then went on to hold as follows:

There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. *In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.*

*Goodwin*, 457 U.S. at 381, 102 S. Ct. at 2492-93 (emphasis added).

¶35    Applying the reasoning expressed in *Goodwin*, we conclude that there exists the appearance and reasonable likelihood of prosecutorial vindictiveness in this case. *See Groves*, 571 F.2d at 453 ("it is the *appearance of vindictiveness*, rather than *vindictiveness in fact*, which controls.") (emphasis in original). After the mistrial, the parties were not in a standard "pretrial" plea bargaining situation. The facts and witnesses were known, and "the State [had] discovered and assessed all of the information against [the] accused and [had] made a determination, on the basis of that information, of the extent to which he should be prosecuted." *Goodwin*, 457 U.S. at 381, 102 S. Ct. at 2493. Knowles had exercised his right to a jury trial, which resulted in a mistrial. Between the first and second trial, no new information was revealed concerning either the extent of B.K.'s injuries or Knowles' conduct. In spite of the lack of any new evidence, the State sought to quadruple the range of punishment to be imposed on Knowles, *after* he declined to plea to the original charges. Upon invitation to do so by

16

the District Court, the State was unable to provide any factual rationale for the increased charges and increased punishment, arguing only that these acts were within its discretion. Even the District Court Judge, who described himself as a "hard sentencer," expressed surprise at the level of punishment sought by the State in this case. In light of the foregoing, we are constrained to agree with Knowles that because no new factual information was uncovered after the first trial which would justify a decision to increase the charges, the threat of a four-fold increase in punishment has the appearance of prosecutorial vindictiveness, and raises the reasonable likelihood that the State was simply utilizing the increased charges in an effort to deter Knowles from exercising his right to a second jury trial.

¶36 Although the dissent is critical of our resolution of this issue, we emphasize that the situation at bar is fundamentally different from the "give and take" of pretrial plea negotiations which occurs every day in our judicial system. Before a trial has actually taken place, the State enjoys broad discretion in its charging decisions. *See Smith*, 280 Mont. at 165, 931 P.2d at 1276 (citing *Bordenkircher*) ("Confronting a defendant with the risk of more severe punishment following the rejection of a plea bargain cannot form the basis for a claim of prosecutorial vindictiveness. Allowing such a claim would contradict the premises that underlie the accepted practice of plea bargaining."). But as the *Goodwin* decision makes clear, the occurrence of a first trial on the merits of the charges changes the calculus significantly with respect to a prosecutor's subsequent charging decisions. If new evidence or information comes to light between the trials which justifies the decision to increase the charges, a decision to "up the ante" may well be

17

appropriate. However, when there is no new evidence and no new information to inform its charging decision, a decision to increase the charges and the range of punishment in that situation raises the reasonable likelihood of a vindictive prosecution.

¶37 Accordingly, we reverse Knowles' conviction for assault with a weapon and remand for a new trial on the charge of assault on a minor. In the interests of judicial efficiency, we address the other issues raised by Knowles to provide guidance to the District Court upon remand.

¶38 **Issue Two:** *Did the District Court abuse its discretion when it admitted evidence of Cindy's abuse of C.F.?*

¶39 Knowles contends the District Court abused its discretion and committed reversible error when it admitted evidence of Cindy's abuse of C.F. under the Modified *Just* Rule. Knowles argues that all four criteria of the Modified *Just* Rule must be met under *State v. Ayers*, 2003 MT 114, 315 Mont. 395, 68 P.3d 768, in order for prior bad act evidence to admitted. In this case, however, the District Court determined that evidence in an "excessive discipline" case could be admitted pursuant to *Murray*, even if the first of the Modified *Just* Criteria was not met. Aside from this general error in the District Court's reasoning, Knowles also argues that the "other acts" of Cindy's assault of C.F. were simply not similar to the allegations that he assaulted B.K. with a belt. Furthermore, Knowles argues that the "other purposes" for which the evidence of Cindy's conduct against C.F. was admitted, such as to prove plan, motive, or intent, were not relevant to an actual issue in controversy for the assault charge.

18

¶40 Knowles also contends that evidence of Cindy's conduct had limited probative value, and was unduly prejudicial and confusing to the jury. By admitting photographic evidence of the injury Cindy caused to C.F. and discussing her conduct towards the boys, Knowles contends he was forced to overcome guilt by association and was exposed to the likelihood that the jury would convict him because of the impression that he—along with his wife—was a bad parent who deserved punishment. Furthermore, the evidence of Cindy's conduct distracted the jury from the real issue in controversy—whether Knowles committed assault with a weapon during a specific instance in April 2008. For these reasons, Knowles argues that the evidence of Cindy's conduct was inflammatory, caused him prejudice, and was not harmless error.

¶41 The State urges us to affirm. The State argues that the evidence of Cindy's conduct was not prohibited by M. R. Evid. 404(b), or even governed by the Modified *Just* Rule, under *State v. Kolb*, 2009 MT 9, 349 Mont. 10, 200 P.3d 504. Specifically, the State contends that because this evidence relates to Cindy's conduct, and not to Knowles himself, it is relevant and admissible.[1]

¶42 In the District Court, the State argued that evidence of Cindy's conduct was admissible as evidence of other crimes, wrongs, or acts, pursuant to the Modified *Just* Rule. The State now changes its legal theory on appeal, arguing that this evidence is not covered by M. R. Evid. 404(b) or the Modified *Just* Rule. We decline to consider the

---

[1] The State alternatively argues that the admission of this evidence constitutes harmless error under *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. Because we are reversing Knowles' conviction on the basis of Issue One, we need not reach this argument.

State's change in legal theory. *See State v. Malkuch*, 2007 MT 60, ¶ 17, 336 Mont. 219, 154 P.3d 558.

¶43 We conclude that the District Court abused its discretion in admitting evidence of Cindy's conduct towards C.F., including photographic evidence of his injuries. As an initial matter, Knowles is correct that all four criteria of the Modified *Just* Rule must be satisfied in order to admit evidence of other crimes, wrongs, or acts. In *Ayers*, we held that all four criteria of the Modified *Just* Rule must be satisfied and explicitly overruled any previous case law which implied the contrary. *Ayers*, ¶ 76. Thus, to the extent the District Court relied on *Murray*, which was decided in 1986, to excuse the State from having to prove that all four criteria of the Modified *Just* Rule were satisfied, this decision was in error. Moreover, it is axiomatic that the "other acts" admissible under the Modified *Just* Rule must be acts of *the defendant*, and not acts of a third party "except in limited circumstances where the defendant is attempting to inculpate another person for the crime." *Kolb*, ¶ 21 (citing *State v. Clifford*, 2005 MT 219, ¶ 44, 328 Mont. 300, 121 P.3d 489).

¶44 We conclude that in any event, evidence of Cindy's conduct in relation to C.F. and B.K. was irrelevant and not probative on the assault with a weapon charge against Knowles. The District Court stated it would allow the evidence of Cindy's slapping C.F. for the purpose of informing the jury how the charges eventually came to be brought against Knowles. However, the District Court could have instructed the State to briefly inform the jury of how the investigation was started without allowing repeated references to Cindy's conduct and without admitting photographic evidence of C.F.'s injuries at

20

trial. *See State v. Derbyshire*, 2009 MT 27, ¶¶ 39-40, 349 Mont. 114, 201 P.3d 811 (stating that repeated references to defendant's status as a probationer and involvement of probation officers in discovering drug evidence were not necessary in order to explain drug possession charges to the jury). Given the potential prejudice resulting from evidence of Cindy's conduct and given that it had no probative value in determining whether Knowles committed assault with a weapon, we conclude the District Court abused its discretion in allowing the introduction of such evidence at trial.[2]

¶45    **Issue Three:** *Did the District Court impair Knowles' ability to present his defense and effectively cross-examine Abrahamson, by denying him access to the CFSD investigative file?*

¶46    Knowles contends the District Court erred by denying him access to the CFSD investigative file. He argues that he was entitled to review the file under § 46-15-322, MCA. Knowles argues that the in camera review of this material by the District Court impaired his ability to present his defense, and contends that the court improperly limited its review to "smoking guns." Knowles contends that had he been allowed to review the file, then the lack of notes regarding the April 30, 2008 conversation would have been fertile ground for cross-examining and impeaching Abrahamson, especially since he implied during his testimony that he did have notes of their conversation when, in fact, such notes did not exist. Knowles further argues that the file was essential to establishing Abrahamson's lack of credibility, asserting that Abrahamson testified at Cindy's trial that

---

[2] We acknowledge that the range of admissible evidence relative to an assault on a minor charge may well be different than that admissible in an assault with a weapon case. However, we can conceive of no reason why photographic evidence of C.F.'s injuries should be admitted upon retrial.

21

Knowles told him of the disciplining incident during the April 30 phone conversation, but testified to the contrary at Knowles' second trial. Knowles therefore contends he was stripped of his ability to properly question Abrahamson without access to the CFSD investigative file and that his conviction should be reversed by virtue of this error.

¶47 The State argues the District Court did not err in the manner in which it handled Knowles' discovery request. The State contends it did not deny Knowles' request for the file. It argues that since the information in the CFSD file is confidential pursuant to *State v. Little,* 260 Mont. 460, 861 P.2d 154 (1993), and § 41-3-205, MCA, the District Court was required to conduct an in camera review and simply could not release the file to Knowles. The State further argues that Knowles overstates the role that the absence of Abrahamson's notes played in the trial in light of Abrahamson's actual testimony. In this connection, the State argues that Abrahamson never unequivocally testified that he took notes of the phone conversation, but instead testified that notes would be in the file *if* he had taken them. The State also contends that Knowles never directly asked Abrahamson if he did or did not take notes during their phone conversation. Thus, the State argues that the absence of notes in the CFSD file would not have had any great significance at trial.

¶48 Section 46-15-322(4), MCA, requires the State to disclose "material and information in the possession or control of members of the prosecutor's staff and of any other persons who have participated in the investigation or evaluation of the case." At the same time, the information contained in a CFSD investigative file in abuse and neglect cases is deemed confidential under § 41-3-205(1), MCA. However, subsection

22

(2) of this statute provides that "[r]ecords may be disclosed to a court for in camera inspection if relevant to an issue before it. The court may permit public disclosure if it finds disclosure to be necessary for the fair resolution of an issue before it." Section 41-3-205(2), MCA.

¶49 A defendant in a criminal trial has a constitutional right to a meaningful opportunity to present a complete defense. *State v. Glick*, 2009 MT 44, ¶ 29, 349 Mont. 277, 203 P.3d 796. The State has an affirmative duty to disclose evidence to a defendant under Montana law. As we stated in *State v. Stewart*, 2000 MT 379, 303 Mont. 507, 16 P.3d 391, "Montana's statutory requirements do not hinge on whether the evidence is exculpatory or inculpatory. The plain language of § 46-15-327, MCA, simply mandates that the State disclose all additional information or material within the State's possession." *Stewart*, ¶ 23.

¶50 In the present case, Knowles' complaint with the District Court's handling of the CFSD investigative file focuses on the absence of notes from Abrahamson's April 30, 2008 phone conversation with Knowles. Knowles claims that Abrahamson bolstered his own credibility by implying that he took notes of this conversation. He complains that if he had been granted access to the CFSD investigative file prior to trial, he would have known in advance that Abrahamson did not take any notes of the April 30 conversation, and he would have been able to impeach any testimony from Abrahamson to the contrary, whether made implicitly in the current trial or directly during Cindy's trial.

¶51 We fail to see how the lack of such evidence, even if it permitted impeachment of Abrahamson and bolstered the testimony of Knowles, would have impacted Knowles'

ability to present a defense in this case. Knowles knew prior to the second trial that Abrahamson claimed to have taken some notes of their conversation during Cindy's trial. Thus, Knowles could have requested that Abrahamson specifically produce the notes, or be prohibited from referring to them at trial. Knowles never made such a request. Moreover, it bears repeating that the only real disputed fact at trial was whether Knowles inflicted bodily injury on B.K. prior to leaving on his trip. Even if it were established that Knowles told Abrahamson he had punished B.K. prior to leaving on his trip, it is unclear how such evidence would have any impact on the disputed material elements of the assault with a weapon charge.

¶52    We acknowledge that Knowles raises an important issue regarding the right of a defendant to present a complete defense in those cases where the contents of a CFSD investigative file are arguably important to the defendant's ability to present his defense. There may be cases in which restricted access to the CFSD file could infringe upon a defendant's right to present a complete defense or where an in camera review by the district court would be insufficient. Thus, we decline to categorically endorse the "smoking gun" approach used by the District Court as correct in all circumstances, because we cannot predict how critical the contents of a CFSD investigative file might be in other cases. In this specific case, however, we conclude that the District Court's approach was appropriate and that Knowles' ability to present his defense was not impaired.

**CONCLUSION**

24

¶53 We reverse and remand Knowles' conviction on the basis of prosecutorial vindictiveness. Furthermore, we hold that the admission of photographic evidence of C.F.'s injuries, as well as other evidence of Cindy's prior bad acts, constituted an abuse of discretion. Finally, we hold that the District Court did not abuse its discretion in conducting an in camera review of the CFSD investigative file, and refusing to disclose the contents of the entire file to Knowles. Reversed and remanded for a new trial on the charge of assault on a minor.

/S/ PATRICIA COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson, specially concurring.

¶54 I join the Court's Opinion on Issues One and Three. With respect to Issue Two, I concur in the Court's decision but write separately to explain my views on that issue.

¶55 The Court holds that all four criteria of the Modified *Just* Rule must be satisfied in order to admit evidence of other crimes, wrongs, or acts. Opinion, ¶ 43. This is a correct statement of the law as it presently stands. *See State v. Ayers*, 2003 MT 114, ¶ 76, 315 Mont. 395, 68 P.3d 768. However, I have recently concluded that the Modified *Just* Rule does not accurately reflect or implement the narrow purpose of M. R. Evid. 404(b), but rather impedes the legitimate use of uncharged misconduct evidence and, moreover, has

generated a great deal of confusion and misconceptions in this area of law. *See State v. Stout*, 2010 MT 137, ¶¶ 75, 79, 93-102, 356 Mont. 468, ___ P.3d ___ (Nelson, J., dissenting). Among other things, I proposed in *Stout* that we should jettison the first two substantive requirements of the Modified *Just* Rule (similarity and nearness in time), *see Stout*, ¶ 102, since these two criteria do not apply to every nonpropensity purpose for which uncharged misconduct evidence might be offered, *see e.g. Stout*, ¶ 99 (noting that a dissimilar crime (e.g., a carjacking) might be admissible to show the defendant's overall plan to use the car in the charged offense (e.g., a kidnapping), which in turn shows that he is the perpetrator of that offense and had the requisite mens rea). I still maintain that, in the proper case, we should revise the Modified *Just* Rule so that it conforms to the actual purpose and scope of Rule 404(b).

¶56 For the reasons stated in ¶ 44 of the Court's Opinion, however, it is not necessary to reexamine the Modified *Just* Rule in the present case. Accordingly, with the foregoing caveat, I concur in the Court's decision on Issue Two.


/S/ JAMES C. NELSON


Chief Justice Mike McGrath, concurring in part and dissenting in part.

¶57 I concur with the Court's ruling on Issue three and with the result on Issue two. I dissent on Issue one.

¶58 The admission of the photograph depicting an injury caused to one of the boys by the defendant's wife was reversible error. It was not admissible under M. R. Evid. 402 as it was not relevant to the determination of the crime charged. Even had the photograph been relevant, it should have been excluded as prejudicial and misleading pursuant to M. R. Evid. 403. Nor do the provisions of M. R. Evid. 404(b) allow for the photograph's admission under the facts of this case.

¶59 However, I dissent on whether the prosecutor's offer to allow the defendant to plead guilty to one felony before amending the charge to a different felony without greater penalty was vindictive behavior under the law. Prosecutors in Montana have wide discretion to determine the offense charged as long as the facts alleged support the charge. *State v. Mahoney*, 264 Mont. 89, 96, 870 P.2d 65, 70 (1994) (*quoting State v. Booke*, 178 Mont. 225, 230, 583 P.2d 405, 408 (1978) ("When the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of *prosecutorial discretion*.")). A prosecutor may move the court to amend an information in matters of substance at any time up to five days before trial. Section 46-11-205(1), MCA.

¶60 This Court has squarely addressed the issue of vindictive prosecution before:

> Confronting a defendant with the risk of more severe punishment following the rejection of a plea bargain cannot form the basis for a claim of prosecutorial vindictiveness. *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. Allowing such a claim would contradict the premises that underlie the accepted practice of plea bargaining.

*State v. Smith*, 280 Mont. 158, 165, 931 P.2d 1272, 1276 (1996).

¶61     Indeed, the facts here present nothing more vindictive than the "accepted practice of plea bargaining." Regrettably, the majority opinion's creation of a presumption of vindictive prosecution under these facts undermines the plea bargaining process. Moreover, the majority misinterprets U.S. Supreme Court decisions in order to apply this presumption. The U.S. Supreme Court upheld the constitutionality of plea bargaining in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663 (1978). The Court applied a presumption of vindictive prosecution to hold that the State denied a defendant due process by charging him with a felony after he appealed and obtained a trial de novo of a misdemeanor conviction for the same conduct. *Blackledge v. Perry*, 417 U.S. 21, 27-29, 94 S. Ct. 2098, 2102-03 (1974). However, the Court declined to apply a presumption of prosecutorial vindictiveness to pretrial plea negotiations that resulted in increasing misdemeanor charges to felony charges when the defendant refused to plead. *U.S. v. Goodwin*, 457 U.S. 368, 381-84, 102 S. Ct. 2485, 2492-94 (1982).

¶62     The key factual difference that accounts for the U.S. Supreme Court applying a presumption of vindictive prosecution is the existence of a conviction for the original charges. Knowles first felony trial resulted in a mistrial. Shortly thereafter, the State charged Knowles with felony assault with a weapon on December 22, 2008. He was convicted after a trial held June 15-17, 2009. This timing comports with § 46-11-205(1), MCA, and falls within the bounds of prosecutorial discretion. Unlike *Blackledge*, Knowles did not appeal from a conviction. Like *Goodwin*, the charges against Knowles were increased during pretrial negotiations, well before he was convicted. To hold that a presumption of vindictive prosecution applies to these facts is an overreaction that creates

28

an unworkable precedent. Our precedent does not require such a presumption and the Court's holding will only undermine principles of judicial economy promoted by plea negotiations.

¶63 I would not apply a presumption of vindictive prosecution, and therefore dissent from the Court's holding.


/S/ MIKE McGRATH